Lawrence A. CLOUSE and Employers Mutual Liability Insurance Company of Wisconsin, Appellants,

v.

AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Appellee.

No. 9708.

United States Court of Appeals Fourth Circuit.

Argued Feb. 3, 1965.

Decided March 25, 1965.

Henry B. Smythe, Charleston, S. C. (Buist, Buist, Smythe & Smythe, Charleston, S. C., on brief), for appellants.

William H. Grimball, Jr., Charleston, S. C. (Grimball & Cabaniss, Charleston, S. C., on brief), for appellee.

Before BRYAN and J. SPENCER BELL, Circuit Judges, and CHRISTIE, District Judge.

J. SPENCER BELL, Circuit Judge.

The plaintiff brought this action to establish the liability of the defendant under its garagekeeper's liability insurance policy issued to Prothro Chevrolet, Inc. [hereinafter Prothro], an automobile dealer in Manning, South Carolina, for damages sustained in an automobile collision with one Freddie G. Munn. The district court entered summary judgment for the defendant, and the plaintiff appealed.

On June 5, 1961, Prothro delivered to Munn a 1956 Oldsmobile automobile. The title to this automobile was listed by the State of South Carolina in one Woodrow Way, from whom Prothro had repossessed it under the terms of a conditional sales contract. Munn made the required down payment and executed a conditional sales contract for the balance of the purchase price. He received from Prothro a car invoice, the completed Transfer and Warranty of Title by Registered Dealer (South Carolina State Highway Department Form 400), the old certificate of title which had been issued to Way, and a blank Liability Insurance Certificate (South Carolina State Highway Department Form 402). All of the forms except the certificate of insurance were completed by Prothro, the necessary filing fee of $1.00 was clipped thereto, and the papers were placed in an envelope addressed to the State Highway Department. The insurance certificate was not completed because Munn had no liability insurance; and since the State Highway Department will not issue the new title without this certificate, the specified documents were not mailed to the

Department by Prothro as required by the statute but instead were delivered to Munn. Two days later the wreck occurred. Munn had neither purchased insurance nor completed and mailed the papers to the State Highway Department, nor had he complied with the alternative provisions of the Uninsured Motor Vehicles Law of South Carolina.

The plaintiff has recovered a judgment against Munn, and in this suit he seeks to hold the defendant liable for that judgment under the omnibus clause of the garagekeeper's liability insurance policy which it issued to Prothro. That clause covered "any automobile owned by or in charge of the named insured," and the word "insured" included "any person while using an automobile covered by this policy * * * provided the actual use of the automobile [was] by the named insured or with its permission." The defendant insurance company participated in the unsuccessful defense of the plaintiff's suit against Munn.

The plaintiff contends that Prothro's failure to comply with the statutory requirements left him with an interest in the vehicle which entitles the plaintiff to hold the defendant responsible under the omnibus clause of the insurance policy quoted above. We agree.

In its laws governing motor vehicle registration and licensing, South Carolina Code of Laws, title 46 (1962), South Carolina has clearly spelled out a public policy that motor vehicles are not to be operated upon its highways without liability insurance coverage or its equivalents for uninsured motorists. Administratively, the state refuses to register or transfer title to or to license the operation of a vehicle without proof of insurance or its statutory equivalents. Sections 46–17(3) and 46–137. Failure to comply with the statute is a misdemeanor. Section 46–11.[1] We note parenthet-

---

1. "§ 46–11. Vehicles required to be registered and licensed.—Every motor vehicle, trailer, semitrailer, pole trailer and special mobile equipment vehicle driven, operated or moved upon a highway in this

State shall be registered and licensed in accordance with the provisions of this chapter. It shall be a misdemeanor for any person to drive, operate or move upon a highway or for the owner know-

ically that we are not concerned with the alternatives to liability insurance in this case, sections 46–135 through 46–138.8, since it is conceded that neither Munn nor Prothro complied or attempted to comply with them.

We turn then to the particular statutes involved in this case. Two sections deal with how voluntary transfers are carried out and when such transfers are effective. Section 46–150.15 [2] provides for those situations in which the transferor is the registered titleholder named in the certificate issued by the State Highway Department covering the subject automobile. In effect the section provides that the seller may either deliver the specified documents to his transferee who must thereupon mail or deliver them to the Department or the transferor may himself mail or deliver them to the Department. It further provides that except as between the parties, the transfer is not effective until the section has been complied with.

■■ The other section dealing with voluntary transfers, section 46–150.16,[3] is the controlling provision in this case. It provides for those situations in which a registered dealer transfers a car of which he is not the registered titleholder. This section specifically provides that *the transferor himself* must mail or deliver the specified documents to the Department. Thus, in exchange for the privilege of holding the car in his stock for resale without having it titled in his own name, the responsibility is placed upon the dealer instead of the purchaser to see that the old certificate, together with any other necessary documents, is sent to the Department when the car is resold. In view of the fact that these papers must include a certification that the new applicant has liability insurance coverage or its equivalents before the Department will issue the new certificate of title, we are forced to the conclusion that the distinction between sections 46–150.15 and 46–150.16 is of legal significance in the state's program of insurance. It is an administrative device by which the state seeks to assure itself of continued liability coverage on a large number of secondhand cars sold throughout the state. We think section 46–150.16, when considered in conjunction with the other sections of the South Carolina Motor Vehicle Registration and Licensing Act and particularly section 46–150.15, indicates a legislative intent to hold the

---

ingly to permit to be driven, operated or moved upon a highway any such vehicle which is not registered and licensed and the required fee paid as provided for in this chapter."

2. "§ 46–150.15. How voluntary transfer carried out; when transfer effective.—If an owner, manufacturer or dealer transfers his interest in a vehicle other than by the creation of a security interest, he shall, at the time of the delivery of the vehicle, execute an assignment and warranty of title to transferee in the space provided therefor on the certificate or as the Department prescribes and cause the certificate and assignment to be mailed or delivered to the transferee or to the Department.

"Except as provided in § 46–150.16, the transferee shall, promptly after delivery to him of the vehicle, execute the application for a new certificate of title in the space provided therefor on the certificate or as the Department prescribes and cause the certificate and application to be mailed or delivered to the Department.

"Except as provided in § 46–150.16, and as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with."

3. "§ 46–150.16. Same; when dealer purchases vehicle for resale.—If a dealer buys a vehicle and holds it for resale and procures the certificate of title from the owner within ten days after delivery to him of the vehicle, he need not send the certificate to the Department, but, upon transferring the vehicle to another person other than by the creation of a security interest, shall promptly execute the assignment and warranty of title by a dealer, showing the names and addresses of the transferee and of any lienholder holding a security interest created or reserved at the time of the resale and the date of his security agreement, in the spaces provided therefor on the certificate or as the Department prescribes, and mail or deliver the certificate to the Department with the transferee's application for a new certificate."

transfer ineffectual, certainly to the extent necessary to hold the insurance carrier liable under the circumstances of this case, unless there is compliance with its terms by the dealer-transferor. We think the failure of Prothro to comply with the statute left him with a responsibility for the operation of the car by Munn with his consent which is covered by the omnibus clause of his liability insurance policy.[4]

Regrettably, the Supreme Court of South Carolina has had no opportunity to pass upon the broad question of state policy which is now before us. Decisions from other jurisdictions involving different factual situations and slight differences in statutory wording and arrangement offer guidance, but of necessity they cannot control the outcome here. See, e. g., Nettles v. General Acc. Fire & Life Assur. Corp., 234 F.2d 243, 247 (5 Cir. 1956) (La. law discussed); Sabella v. American Indem. Co., 372 S.W. 2d 36 (Mo.1963); Eggerding v. Bicknell, 20 N.J. 106, 118 A.2d 820 (1955); Brewer v. De Cant, 167 Ohio St. 411, 149 N.E. 2d 166 (1958); 7 Appleman, Insurance Law & Practice § 4451 and cases cited at p. 473 (1962).

In support of its assertion of nonliability on the facts of this case, the defendant relies upon Bankers Ins. Co. of Pa. v. Griffin, 137 S.E.2d 785 (S.C.1964). We think its reliance on that decision is misplaced. That case was a declaratory judgment action to determine which of two insurance companies was responsible for the damages resulting from an automobile accident. Involved in the case were two brothers, Merdy V. and Henry D. Griffin, and the purchase of a 1960 Pontiac automobile. Merdy Griffin actually bought the car, but because his credit

was unsatisfactory, his brother Henry gave a note for the unpaid purchase price and signed the mortgage securing it. The title certificate was issued to Henry, but the car was delivered to Merdy, who had exclusive control and use of it. With a full explanation of these facts, Merdy's carrier agreed to extend Merdy's liability insurance coverage to include this car. After this insurance was in effect, the car was involved in an accident. Merdy's insurance carrier resisted payment of the claims arising out of the accident, contending that since Henry was the registered owner of the vehicle, his insurance company was responsible for the damage. The South Carolina Supreme Court upheld a lower court ruling that despite the registration of the automobile in Henry's name, Merdy's insurance company could not escape liability because its insured had made a full and complete disclosure that he held only an equitable interest in the car and the insurer had accepted the premium and issued an endorsement on Merdy's liability insurance policy to cover this vehicle. The court also held[5] that Henry's insurer was not liable under its automatic coverage for a newly acquired automobile, stating:

> "In other words to be covered as a newly acquired automobile, the vehicle must be one in which the named insured not only has an insurable interest—he must own the automobile. See 34 A.L.R.2d 936." 137 S.E.2d at 787.

The court added further:

> "Conceding the fact that Henry D. Griffin had an insurable interest in the 1960 Pontiac, [his policy] affords no coverage under the 'automatic

4. "It is true that to support an action on a policy which insures a property right, i. e., against collision, fire, wind or theft, etc., an insurable interest in the named insured must be proved. On the other hand, where an insurance policy is one of indemnity against liability for loss and injury sustained by others and caused by the use of an automobile or other property named in the policy, an insurable interest in the named insured is not a prerequisite to a recovery against the insurer." Ohio Farmers Ins. Co. v. Lantz, 246 F.2d 182, 185 (7 Cir.), cert. denied, 355 U.S. 883, 78 S.Ct. 151, 2 L.Ed.2d 113 (1957); see also United Services Auto. Ass'n v. Howe, 208 F.Supp. 683, 685 (D. Minn. 1962).

5. Citing Robinson v. Georgia Cas. & Sur. Co., 235 S.C. 178, 110 S.E.2d 255 (1959).

insurance' clause as Henry was not the true owner of said vehicle." Ibid.

In the present case we have no doubt that Munn was the principal owner and was certainly primarily liable, but we simply hold that Prothro's failure to comply with the affirmative obligation placed upon him by the South Carolina statute also makes his insurance carrier financially responsible for the plaintiff's judgment.

Nor do we think that the decision of this court in Lynch v. United States Branch, Gen. Acc. Fire & Life Assur. Corp., 327 F.2d 328 (4 Cir. 1964), is controlling in the case at bar. In that case the question was which of two insurance companies was primarily liable and which secondarily for the wrongful death of William R. Lynch. There one James David Alexander had negotiated a trade with the Bob Edwards Chevrolet Company by which he was to exchange his 1956 Ford for a 1960 Chevrolet Impala. The terms were agreed upon, a conditional sales contract was signed, Alexander's Ford was left with Edwards, and the Chevrolet Impala was delivered to Alexander, who was to return the next day, pay the balance of his down payment, bring the title certificate for his Ford, and receive the certificate of title on the Chevrolet and other papers. The wreck occurred before the hour for closing the transaction arrived. The court in Lynch was careful to state the narrow question posed by the case. It said:

"[The parties] are all agreed that the question of primary and secondary liability between the two insurance companies is to be determined by whether or not the Impala Chevrolet had been sold or transferred to Alexander so as to make it an 'owned' automobile under American Casualty's policy of liability insurance upon Alexander's Ford automobile (the insured vehicle) or whether it was a 'non-owned' automobile so as to make American Casualty only

secondarily liable to the coverage afforded by General Accident under its policy of insurance on the vehicles of Bob Edwards Chevrolet." 327 F.2d at 331.

The court continued:

"But the premise upon which this case was tried below is that the question of ownership alone, without the qualifying phrase 'sole and unconditional', is determinative and makes our task easier.

"The way the parties have framed the question, the extent of [the dealer's] 'ownership' is itself irrelevant (except as it argues against Alexander's ownership) and all that matters is whether or not the Impala Chevrolet had been sold or transferred to Alexander so as to make it an 'owned' automobile under American Casualty's policy of liability insurance. We hold that it had been." 327 F.2d at 332.

Finally, the court rejected the argument that section 46–150.15 of the South Carolina Motor Vehicle Registration and Licensing Act required a different result, basing its decision on the proviso contained in that section, "Except * * * as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with." While the proviso relied upon by the court there is not repeated in section 46–150.16, which is controlling in our case, the court in Lynch made the observation that the South Carolina Motor Vehicle Registration and Licensing Act related to property rights in automobiles and that it did not appear that it was intended that it govern the rights of third-party insurance carriers. This remark misled the trial court in the present case in spite of the fact that it was dictum and in spite of the fact that the Lynch court itself went on to point out that even though some ownership of the automobile may have been in both parties, its function was only to decide whether Alexander had sufficient owner-

ship to make his carrier liable for the damages arising out of the accident.[6]

Our case and the section with which we are involved have required us to examine not only chapter 3 of title 46 of the South Carolina Code, which expressly deals with the protection of titles, but also chapter 1, which controls registration and licensing, and chapter 2, which deals with the registration and licensing of uninsured vehicles. From our consideration of these provisions, we discern a state policy which would make the language of the court in Lynch inapplicable except in the narrow factual context of that case. Accordingly, the judgment of the district court is reversed, and the case is remanded for the entry of a judgment in accordance with this opinion.

Reversed and remanded.

6. The limited nature of the Lynch holding is emphasized by this statement from the opinion: "Reluctant as we are to construe a South Carolina statute which has not been construed by the Supreme Court of that state, we are compelled to do so. *We go no further than necessary to decide this case.*" 327 F.2d at 332. (Emphasis added.)