GOVERNMENT EMPLOYEES INSURANCE COM-
PANY *v.* COPPAGE, REC'R OF NATIONAL
MOTORS INSURANCE CO., ETC.

[No. 374, September Term, 1964.]

18

*Decided August 5, 1965.*

The cause was argued before HORNEY, MARBURY, SYBERT, OPPENHEIMER and BARNES, JJ.

*Edward C. Bell* for appellant.

*Joseph S. Kaufman* for appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

This dispute between one insurance company and the receiver of another as to coverage for automobile liability turns on whether title to an automobile had passed at the time of the accident. The appellant, Government Employees Insurance Company (G.E.I.C.), filed a declaration for a declaratory judgment under the Uniform Declaratory Judgment Act, Code (1957), Art. 31A against National Mutual Insurance Company of Maryland (National), in the Circuit Court for Prince George's County, asking that the court declare that an automobile liability policy issued by National to Charles M. Patterson is the primary coverage as to a collision in which a Buick automobile alleged to have been owned by Patterson at the time was involved, and that no coverage is afforded either Patterson or David C. Barnes, the insured under the policy of G.E.I.C., as to the collision. After the filing of the declaration, John H. Coppage was duly appointed receiver of National and contested the relief prayed. Testimony was taken before Judge Parker who denied the relief prayed by G.E.I.C. and ordered that the liability policy issued by that company afforded coverage of Patterson and/or Barnes for possible liability arising out of the accident. G.E.I.C. appealed.

20

The basic facts are virtually undisputed. On Monday, January 7, 1963, Barnes and Patterson met after work in Hyattsville, at the Greenwood Inn, colloquially referred to as "Smitty's". Barnes owned a Ford Falcon insured by G.E.I.C. Patterson told Barnes he had an automobile for sale, a 1956 Buick sedan. Barnes said that he needed a second car and agreed to buy the Buick for $200 "if it will run." The next day, Tuesday, January 8, Barnes telephoned the G.E.I.C. and said: "You have a policy on my Ford Falcon. I am going to buy a Buick and I want it to be covered." The representative of the G.E.I.C. said: "You are covered as of this moment." The next day, Wednesday, January 9, Barnes and Patterson met at Becker's Tag and Title Service Company in Hyattsville, a company which arranges for the transfer of title to automobiles. At Becker's, Patterson presented his certificate of title to the Buick, which he duly assigned to Barnes. Patterson's execution of the assignment was notarized. At the same time, Patterson executed a so-called bill of sale to Barnes. This document stated that "I, Charles N. Patterson, hereby sell my 1956 Buick, serial 7C5035196 to David C. Barnes for the sum of $200.00" and was signed and sworn to by Patterson. Barnes paid $20 to Becker's for the purpose of defraying the expenses of obtaining the new title and tags, which would take approximately two days. Barnes also signed and swore to the application for a new certificate of title as purchaser.

Patterson testified that after these papers had been signed, Barnes asked him if he would do him a favor and pick up his tags and title and bring them over to Smitty's; Patterson worked near Becker's so that it would be convenient for him to pick up the tags and the title. It was also agreed at this time that when the tags and title were received Barnes would give Patterson a check for $200.

After the meeting at Becker's, Barnes and Patterson again met at Smitty's and Barnes told Patterson "to go ahead and drive the car until Friday" when the new tags would be put on the car. After leaving Becker's at approximately 8:30 P.M. on the same day, January 9, Patterson, while driving the Buick, was involved in a collision which totally demolished the car.

An action was subsequently brought against Barnes and Pat-

terson by various persons injured in the accident. G.E.I.C. contended that Barnes never became the owner of the car and that Barnes was not covered under the policy issued by G.E.I.C. to Barnes. It requested National to take over the defense of the personal injury action; National refused, and the present litigation resulted. The appellant contends that the record does not support the finding of the court below that at the time of the accident Barnes was the owner of the automobile driven by Patterson; that the liability policy issued by National was the primary coverage as to the collision; and that the court below erred in excluding certain evidence.

I

National has filed a motion to dismiss the appeal because certain documents introduced in evidence at the trial below were not included by G.E.I.C. in the appendix to its brief in this Court. These documents are: the registration certificate of the 1956 Buick; the assignment thereof to Barnes; Barnes' application for a new title certificate; the so-called bill of sale signed by Patterson; the receipt of Becker's Title and Tag Service Company showing the payment by Barnes of $20; and the policy of insurance issued by G.E.I.C. to Barnes.

Prior to the argument in this Court, G.E.I.C. filed a supplementary appendix containing these exhibits. Moreover, the opinion of Judge Parker, as well as the record extract and the arguments of counsel, all printed in the original appendix, clearly set forth the nature and substance of the exhibits.

In *Shapiro v. County Commissioners,* 219 Md. 298, 300, 149 A. 2d 396 (1959), the appellees filed a motion to dismiss the appeal because a deed filed as an exhibit with the bill of complaint was not included in the record abstract. We held that the record as presented was sufficient for a determination of the questions involved in the appeal and overruled the motion to dismiss. In *Seybolt v. Baber,* 203 Md. 20, 25-26, 97 A. 2d 907 (1953), the appellants failed to print in their appendix any of the testimony necessary for a proper consideration of the question raised by them but did include in the appendix a number of exhibits and the opinion of the trial judge, while the appel-

lee printed a considerable amount of testimony in the appendix to her brief. We found that we had before us all the material necessary to decide the issue and refused to dismiss the appeal.

Admittedly, National has not been prejudiced by the omission of G.E.I.C. to present the exhibits in its first appendix and, prior to the argument, we had before us all the exhibits necessary to decide the issues presented. Under these circumstances, the motion to dismiss the appeal will be denied. See *Mayor and City Council of Baltimore v. Borinsky*, 239 Md. 611, 212 A. 2d 508 (1965), and cases therein cited.

II

In his opinion, Judge Parker found that Barnes had met Patterson at Becker's Tag and Title Service Company to effect the transfer of the automobile which Barnes had agreed to purchase; that Becker's was the agent of Barnes to effectuate the transfer of title from Patterson to Barnes; that the documents signed by Patterson and the payment of the $20 by Barnes to Becker's to consummate the transfer constituted a transfer and sale of the automobile from Patterson to Barnes as of that time; and that the fact the purchase price of $200 had not been paid, under the facts and the law, was immaterial. He held further that Barnes' permission to Patterson to continue using the car for the few days until the new tags could be procured made Barnes a permissive user and therefore a person insured under the G.E.I.C. policy.

The Uniform Sales Act in effect at the time of the transaction here involved, Code (1957), Art. 83, § 36, provided in part as follows:

"1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred."

Under the Act, as at common law, it is the expressed intention of the parties as to when title is to be transferred which governs. *Syriani v. Gebhart*, 195 Md. 69, 77, 72 A. 2d 766 (1950). See also *Agri Mfg. Co. v. Atlantic Fer. Co.*, 129 Md. 42, 48, 98 Atl. 365 (1916); Williston on Sales rev. ed., § 410; Corbin on Contracts, § 30.

The execution by Patterson of the assignment of the certificate of title to the automobile and the execution by Barnes of the application for a new certificate of title, of themselves, were not sufficient to effectuate a transfer of title. In *Inland Mutual Insurance Co. v. Stallings,* 263 F. 2d 852, 854-55 (4th Cir. 1959), the appellant had brought suit, in the U. S. District Court for the District of Maryland, for a declaratory judgment to determine its obligation under an automobile liability policy to persons making claims for injuries sustained in an automobile collision. One of the points involved was whether, on a certain date, Stallings had owned a 1948 Ford not insured by Inland. Stallings' uncontradicted testimony was that he had delivered possession of that car and the certificate of title thereto to an automobile dealer. Chief Judge Sobeloff, for the court, stated that, under the Maryland Uniform Sales Act, such delivery and assignment of title were sufficient to pass ownership at the time, if the party so intended, but that the registration records were not determinative, under the facts, as to whether title passed. See also *Mohr v. Sands,* 213 Md. 206, 213-14, 131 A. 2d 732 (1957) in which Chief Judge Brune, for the Court, stated that the purpose of the Maryland statutes for the recordation of conditional contracts of sale is primarily to give protection against the consequences of false or misleading appearances of ownership based upon the possession of titles, and not for the transfer or curtailment of any rights of ownership in the conditional vendor.

Nor did the document signed and sworn to by Patterson in Becker's office, in which he stated that he sold his 1956 Buick to Barnes for the sum of $200, comply with all the formal statutory requirements of a bill of sale. Code (1957), Art. 21, § 42, in effect at the time of the transaction, provided, *inter alia,* that a bill of sale shall be signed and sealed by the vendor. The document here involved did not contain Patterson's seal. Section 77 of the same article provided that a bill of sale must acknowledge receipt of the consideration by the vendor. Patterson did not acknowledge receipt of the agreed upon purchase price but merely stated that he sold his Buick for the sum of $200.

However, the papers signed by Barnes and Patterson at

Becker's office, when taken with the other undisputed facts, constituted ample evidence for Judge Parker to find, as he did, that the parties actually intended title to pass when the papers were executed. Two days before that time, they had agreed on the sale and purchase and the price. The day before, Barnes notified his insurance company, the G.E.I.C., that he had purchased the car. They met in the office of Barnes' title agent to whom Barnes paid $20 for the expenses of securing the title and new tags. Viewed against this prior factual background, Barnes' execution of the application for a new certificate of title, as purchaser, and Patterson's assignment of his certificate and written acknowledgment that "I hereby sell" the Buick to Barnes constitute strong evidence that the intent of the parties was to effectuate the change of title at the meeting in Becker's office.

G.E.I.C. contends that the court's finding that title passed at that time was erroneous because the payment for the car was not to be made for several days and because, in the meantime, Patterson was given the right by Barnes to retain possession of the car. Neither of these factors is determinative. Section 37 of the Uniform Sales Act sets forth Rules for ascertaining the intention of the parties. Rule 1, referred to by Judge Parker in his opinion, provides as follows:

> "Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passed to the buyer when the contract is made, and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed."

As Judge Parker pointed out, if, as he found, title had been given by the seller to the purchaser, it was only a question of the seller's good or bad judgment that he had not insisted upon the payment of the purchase price at that time. The testimony was uncontradicted that Patterson was to pick up the title and the new tags from Becker's when they arrived because he worked close by. Barnes had another car. The interpretation of the delay of a few days in the actual delivery of the car and the payment of the purchase price, as a matter of mutual convenience to the parties, is at least as persuasive as a con-

trary construction that there was no intent to pass title before delivery. Judge Parker's finding that Patterson's continued use of the car was only by reason of permission given by Barnes, the new owner, is a finding of fact consistent with the testimony, and is not clearly erroneous.

G.E.I.C. relies upon *Agri Mfg. Co. v. Atlantic Fer. Co., supra,* as authority for its contention that title to the car in this case did not pass. In *Agri* there was a contract of sale of a quantity of fertilizer and the terms of sale gave to the purchaser upon delivery the right to have a chemical test made, with the absolute right to refuse the goods unless they met the agreed test. On these facts, we held that title had not passed prior to the examination. Judge Urner said, for the Court, that a sale on terms permitting rejection of the goods if they do not pass a prescribed test of quality is somewhat analogous to a sale on trial and that the absolute right conferred upon the buyer to refuse the material delivered to it if it did not meet the test agreed upon was a conclusive indication that the title was not intended to pass to the buyer until the opportunity for making the test was afforded. The holding in *Agri* is not apposite to the issue in this case.

We hold that the finding of Judge Parker that it was the intention of the parties that title to the Buick automobile should pass when the various papers were signed in Becker's office is supported by the evidence, and that his conclusion that title did pass at that time is consistent with the applicable legal principles.

III

G.E.I.C. claims reversible error because the court below sustained objections to questions put to Barnes and Patterson as to what their respective understandings or intentions were as to when ownership of the car should pass. The sustaining of the objections to these questions was proper. It is the intention of the parties as expressed in their words and the papers which they sign, not their own interpretation as to what their statements and acts were supposed to mean, which is determinative. *Glass v. Doctors Hospital,* 213 Md. 44, 58, 131 A. 2d 254 (1957) and authorities therein cited; Corbin on Contracts, *supra,* § 30 at 98-99. " 'Property in goods passes * * * when-

ever it is the intention of the parties that the property should pass' * * * By intent must be understood here, as always in contractual law, an intent made manifest, not a secret intent." Williston on Sales, *supra*, § 410 at 548; See Restatement, Contracts, § 230 (b) (1932).

Other objections made by G.E.I.C. to the lower court's rulings on evidentiary matters involved the striking out of answers by witnesses to questions when the answers clearly were not responsive. The court's rulings in these matters were correct.

G.E.I.C. also contends that the lower court was in error because it refused to allow G.E.I.C. to endeavor to prove by parole testimony a subsequent oral agreement modifying the terms of the alleged sale. Under certain circumstances, it has been held competent to prove by parole a distinct subsequent agreement waiving, abandoning or modifying the terms of a written contract. *Freeman v. Stanbern Const. Co.*, 205 Md. 71, 78-79, 106 A. 2d 50 (1954); *Allen v. Sowerby*, 37 Md. 410 (1873). See also *Chesapeake Supply & Equipment Co. v. Manitowoc Engineering Corp.*, 232 Md. 555, 566, 194 A. 2d 624 (1963). The alleged subsequent parole agreement in this case was the conversation between Barnes and Patterson after the papers had been signed at Becker's, in which Barnes asked Patterson to pick up his tags and title and bring them to Smitty's, when Barnes would pay the purchase price, and in which permission was given by Barnes to Patterson to drive the car for the few intervening days. The short answer to the contention of G.E.I.C. is that this testimony was before the court. In his opinion, Judge Parker referred to the permission given by Barnes to Patterson to continue using the car. The effect of the court's decision is that the subsequent conversation went only to the arrangements between the parties as to the mechanics of delivery of the title and new tags and to the effect of the permissive use of the automobile by Patterson on the terms of the G.E.I.C. policy. It is implicit in Judge Parker's opinion that these arrangements were consistent with and did not affect the transfer of title to the automobile which had previously been consummated. We agree.

## IV

The G.E.I.C. policy which insured Barnes against liability at the time title to the Buick automobile passed to him from Patterson provided that the persons insured included "any other person using such automobile, provided the actual use thereof is with the permission of the named insured." It also provided that if the insured has other insurance, the insurance with respect to a non-owned automobile shall be excess insurance over any other valid and collectible insurance.

In its declaration for a declaratory judgment, G.E.I.C. asked the court to determine whether the policy issued by National is the primary coverage as to liability for the collision in which the automobile was involved when driven by Patterson and whether any coverage is afforded to either Patterson or Barnes as to the collision under the policy of liability insurance issued by G.E.I.C. Irrespective of whether G.E.I.C. was entitled to the relief which it requested under the Declaratory Judgment Act, the rights of the respective parties should have been declared. *Reed v. President of North East,* 226 Md. 229, 253, 172 A. 2d 536 (1961) ; *John B. Robeson v. Gardens,* 226 Md. 215, 219 at fn. 1, 172 A. 2d 529 (1961). The order of the lower court only declared that the liability policy issued by G.E.I.C. afforded coverage of Patterson and/or Barnes for possible liability arising out of the accident on January 9, 1963; the order did not set forth, as under the pleadings it should have, whether or not this coverage was primary.

*Zurich Ins. Co. v. Continental Casualty Co.,* 239 Md. 421, 212 A. 2d 96 (1965), like this case, presented a controversy between two automobile liability insurance carriers. The relevant portions of the Zurich policy were substantially similar to the portions of the G.E.I.C. policy to which reference has been made. In that case, as in this, we held that the driver of the automobile at the time of the collision was a non-owner who was driving the vehicle with the permission of the owner. We held further that the non-owner was covered primarily by the owner's policy (Zurich's).

In *Zurich,* we had before us the relevant portions of the policies of both insurance companies. Here, the National policy was not offered in evidence. We do not, therefore, reach the question of whether under the National policy the protection af-

forded Patterson was also primary or only excess insurance. However, as in *Zurich,* we hold that G.E.I.C. was primarily liable to Barnes and Patterson to the extent of its policy. The order of the lower court, therefore, is modified so that the relevant paragraph therein shall read as follows:

> "ORDERED that the Court declares that the automobile liability policy issued by Government Employees Insurance Company affords primary coverage of Charles N. Patterson and/or David C. Barnes for possible liability arising out of an accident on January 9, 1963, on Maryland Route No. 214; * * *"

*Order modified as above set forth and, as so modified, affirmed; costs to be paid by the appellant.*