**SECURITY GENERAL INSURANCE COMPANY, Plaintiff,**

v.

**BILL VERNON CHEVROLET, INC., and Universal Underwriters, Defendants.**

**Civ. A. No. 66-573.**

United States District Court
D. South Carolina,
Aiken Division.

Jan. 17, 1967.

Williams & Johnson, Aiken, S. C., for plaintiff.

Henderson, Salley, Cushman & Bodenheimer, Aiken, S. C., for defendants.

## ORDER

SIMONS, District Judge.

This is a declaratory judgment action within the provisions of Rule 57 of the Federal Rules of Civil Procedure and Sections 2201 and 2202, United States Code, Title 28. Plaintiff issued a policy of liability insurance to Chester L. Anderson a resident of Aiken County, South Carolina, and on April 18, 1966 while

this policy was in force and effect, Anderson was involved in an automobile collision in Aiken County, with a vehicle owned and operated by one Wilbur C. Hair. As a result of the collision, Anderson was injured and suffered damages and thereupon filed a suit which is now pending in this court against Wilbur C. Hair.

Plaintiff alleges that the vehicle being operated at the time of the collision on April 18, 1966 by Hair was registered with the South Carolina State Highway Department in the name of R. J. Sharpton of North Augusta, South Carolina, and had been previously sold by Sharpton to Bill Vernon Chevrolet, Inc. On March 29, 1966, Bill Vernon Chevrolet, Inc., sold the vehicle to Wilbur C. Hair.

Plaintiff contends that Section 46–150.-16 of the 1962 South Carolina Code placed an affirmative obligation upon Bill Vernon Chevrolet, Inc., having held the vehicle in stock for resale without having it titled in its own name, to comply with the requirements of the law upon sale of the vehicle to see that the vehicle was properly titled, including a certification that the new owner had liability insurance coverage or its equivalent. Plaintiff alleges further that since Bill Vernon Chevrolet, Inc., failed to comply with this code section that it and its liability insurance carrier, Universal Underwriters, thereby became financially responsible for any judgment obtained by Anderson against Hair. Plaintiff is the liability insurer of Anderson and his automobile. At the time of the accident Hair had no liability policy covering his car purchased from defendant Bill Vernon Chevrolet, Inc., and was an uninsured motorist. Therefore, plaintiff is liable to the insured Anderson under the uninsured motorist provisions of its policy and the statutes of South Carolina unless defendants can be held responsible. Defendants answered asking that the court relieve them individually and collectively of any liability or responsibility in connection with the collision or the insurance policy issued by Universal Underwriters to Bill Vernon Chevrolet, Inc. There is diversity of citizenship between the parties, the requisite jurisdictional amount is involved, and there is an actual controversy between the parties. Upon a hearing of this case the following facts were stipulated by the parties through their attorneys:

"1. A vehicle operated by Chester L. Anderson and a vehicle operated by Wilbur C. Hair were in collision in Aiken County on April 18, 1966. An action was brought in this Court, Civil Action No. 66–522, by Anderson against Hair for damages resulting from the collision.

"2. At the time of the collision, Anderson owned the vehicle he was operating, and had liability insurance with Security General Insurance Company, including the Uninsured Motorist provision.

"3. At the time of the collision, Hair owned the vehicle he was operating, the vehicle having been owned by one R. J. Sharpton and sold to Bill Vernon Chevrolet, Inc., a South Carolina corporation, with its principal place of business in Aiken. The title to the Hair automobile was not transferred from the previous owner to Bill Vernon Chevrolet, Inc., and the vehicle was registered in the name of the said Sharpton and was placed by the Chevrolet Company in its inventory for sale.

"4. Bill Vernon Chevrolet, Inc., sold the automobile to Hair on March 29, 1966, giving the said Hair a Bill of Sale therefor. The automobile was never registered with the Highway Department of any state by the said Hair, and the said Hair did not have liability insurance upon the automobile at any time after he purchased the automobile, or at the time of the collision aforesaid.

"5. Bill Vernon Chevrolet, Inc. was the holder of a policy issued to it by Universal Underwriters, copy of which is hereto attached as Exhibit A."

Clouse v. American Mut. Liab. Ins. Co., 344 F.2d 18, (4th Cir. 1965), involved a factual situation practically identical with the facts presented here. The insurance

policy issued by Universal Underwriters to Bill Vernon Chevrolet, Inc., is likewise very similar to the coverage in the Garagekeeper's liability insurance policy in *Clouse*. The Universal Underwriters policy in pertinent part provides as follows:

"PART I—LIABILITY

"COVERAGE A—BODILY INJURY LIABILITY; COVERAGE B—PROPERTY DAMAGE LIABILITY: The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages * * * to which Part 1 applies, caused by accident and arising out of the garage operations hazard,

\*  \*  \*  \*  \*  \*

"Automobile Hazards:

1. ALL AUTOMOBILES:

(a) The ownership, maintenance or use of any automobile for the purpose of garage operations, and the occasional use for other business purposes and the use for non-business purposes *of any automobile owned by or in charge of the named insured,* and used principally in garage operations, and

\*  \*  \*  \*  \*  \*

"PERSONS INSURED: Each of the following is an insured under Part 1:

\*  \*  \*  \*  \*  \*

"(3) With respect to the Automobile Hazard:

(a) any partner, or paid employee or director or stockholder thereof or a member of the household of the named insured or such partner or paid employee or director or stockholder while using an automobile covered by this policy *or when legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and*

(b) *any other person* or organization legally responsible for the use thereof only while such automobile is physically operated by the named insured or any such partner or paid employee or director or stockholder, or member of the household of the named insured or partner or paid employee or director, or stockholder, *provided the actual use of the automobile is by the named insured or with his permission."* (Emphasis added).

In regard to the insurance policy in *Clouse* the Fourth Circuit stated:

"The plaintiff has recovered a judgment against Munn, and in this suit he seeks to hold the defendant liable for that judgment under the omnibus clause of the garagekeeper's liability insurance policy which it issued to Prothro. That clause covered 'any automobile owned by or in charge of the named insured,' and the word 'insured' included 'any person while using an automobile covered by this policy * * * provided the actual use of the automobile [was] by the named insured or with its permission.'" 344 F.2d at 19.

In holding Section 46–150.16 of the 1966 South Carolina Code of Laws [1] con-

---

1. Section 46–150.16 reads as follows: *"Same; when dealer purchases vehicle for resale.*—If a dealer buys a vehicle and holds it for resale and procures the certificate of title from the owner within ten days after delivery to him of the vehicle, he need not send the certificate to the Department, but, upon transferring the vehicle to another person other than by the creation of a security interest, shall promptly execute the assignment and warranty of title by a dealer, showing the names and addresses of the transferee and of any lienholder holding a security interest created or reserved at the time of the resale and the date of his security agreement, in the spaces provided therefor on the certificate or as the Department prescribes, and mail or deliver the certificate to the Department with the transferee's application for a new certificate."

Section 46–150.15 is also pertinent to the issue when read with Section 46–150.16 and is as follows: *"How voluntary transfer carried out; when transfer effective.*—If an owner, manufacturer or dealer transfers his interest in a vehicle other than by the creation of a security interest, he shall, at the time of the delivery of the vehicle, execute an assignment and warranty of title to transferee in the space provided therefor on the certificate or as

trolling in such a situation, the Fourth Circuit further stated:

"It provides for those situations in which a registered dealer transfers a car of which he is not the registered titleholder. This section specifically provides that *the transferor himself* must mail or deliver the specified documents to the Department. Thus, in exchange for the privilege of holding the car in his stock for resale without having it titled in his own name, the responsibility is placed upon the dealer instead of the purchaser to see that the old certificate, together with any other necessary documents, is sent to the Department when the car is resold. In view of the fact that these papers must include a certification that the new applicant has liability insurance coverage or its equivalents before the Department will issue the new certificate of title, we are forced to the conclusion that the distinction between sections 46–150.15 and 46–150.16 is of legal significance in the state's program of insurance. It is an administrative device by which the state seeks to assure itself of continued liability coverage on a large number of secondhand cars sold throughout the state. We think section 46–150.16, when considered in conjunction with the other sections of the South Carolina Motor Vehicle Registration and Licensing Act and particularly section 46–150.15, indicates a legislative intent to hold the transfer ineffectual, certainly to the extent necessary to hold the insurance carrier liable under the circumstances of this case, unless there is compliance with its terms by the dealer-transferor. We think the failure of [the dealer] to comply with the statute left him with a responsibility for the operation of the car by [the purchaser] with his consent which is covered by the omnibus clause of his liability insurance policy." 344 F.2d at 20, 21.

The main thrust of defendants' argument is that *Clouse* is an inaccurate interpretation of Section 46–150.16 and they rely upon Grain Dealers Mut. Ins. Co. v. Julian, 247 S.C. 89, 145 S.E.2d 685 (1965). *Clouse* was decided by the Fourth Circuit on March 25, 1965 and *Grain Dealers* was decided by the South Carolina Supreme Court on December 13, 1965.[2] In *Grain Dealers* no intermediary or dealer was involved. Confining its interpretation to Section 46–150.15, the court went no further than to hold that title to a motor vehicle passed to a purchaser notwithstanding the lack of compliance with the title certificate law. As a general proposition this principle has been enunciated as the South Carolina law on other occasions. E. g. Bankers Ins. Co. of Pennsylvania v. Griffin, 244 S. C. 552, 137 S.E.2d 785 (1964); Lynch v. United States Branch, Gen. Acc. Fire and Life Assur. Corp., 327 F.2d 328 (4th Cir. 1964). The Fourth Circuit in *Clouse* reconciled these cases. Nevertheless, the South Carolina Supreme Court in *Grain Dealers* went further and stated:

"We have no statute which makes void transfers or sales of motor vehicles

---

the Department prescribes and cause the certificate and assignment to be mailed or delivered to the transferee or to the Department.
"Except as provided in § 46–150.16, the transferee shall, promptly after delivery to him of the vehicle, execute the application for a new certificate of title in the space provided therefor on the certificate or as the Department prescribes and cause the certificate and application to be mailed or delivered to the Department.
"Except as provided in § 46–150.16, and as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with."

2. This points up the logic of bringing declaratory judgment actions in such cases in the state courts rather than in the federal courts, since federal courts under *Erie* are bound to follow the law of the state in diversity suits. Where as here the state court has not spoken, then the federal court can only speculate as to what the state court would do when presented with such factual situations. Once the State Supreme Court speaks the matter is settled. However, when the federal court speaks, as in *Clouse*, there is still a dispute as to what the State Supreme Court would do under the same circumstances.

which are not made in compliance with the terms of the Title Certificate Law. Therefore, title to a motor vehicle passes to a purchaser notwithstanding the want of compliance with the Title Certificate Law." 145 S.E.2d at 690.

■ Under the *Erie* doctrine this court must apply state law as either declared by its legislature in a statute, or by its highest court.[3] This court is bound by the South Carolina Supreme Court's interpretation of South Carolina law. Conflicting federal interpretations are of no effect. Recent opinions of the United States Supreme Court such as King v. Order of United Commercial Travelers, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948), and Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), have been taken to mean that a federal court in determining what is the state law must keep in mind that its function is not to choose the rule which it would adopt for itself if it were free to do so, but it should choose the rule which it believes the state court is more likely in the future to adopt, and base such a choice on all that is known about the methods of the state court in reaching its decisions. Wright, Federal Courts, Section 58 at 206; Gibbs, How Does The Federal Judge Determine What is the Law of the State, 17 S.C.L.Rev. 487 (1965). The *Clouse* case has been criticized,[4] and obviously *Grain Dealers* has cast doubt upon the Fourth Circuit decision. But several considerations force this court to the conclusion that the *Clouse* interpretation of Section 46–150.-16 is correct and that an insurance carrier is liable under the circumstances of this case.

The factual distinction between *Clouse* and *Grain Dealers* prevents the *Grain Dealers* decision from modifying or over-ruling *Clouse*. In *Grain Dealers*, Julian's insurance policy excluded coverage on any automobile owned by him. No dealer was involved in that case and the Court held that Julian was the owner of the automobile even though he did not have a title, and that under the exclusion of Julian's policy no coverage was afforded him by said policy. Under the *Clouse* interpretation of Section 45–150.16 a dealer who places an automobile in inventory for resale without obtaining a title in his own name obligates himself or his insurance carrier by failing to file or have filed with the Highway Department the documents required by the statute, including the declaration that there was liability insurance. It appears that the South Carolina Supreme Court has not had this specific factual question before it.

It may be said that when the South Carolina Court in *Grain Dealers* speaks of "no statute which makes void transfers or sales of motor vehicles which are not made in compliance with the terms of the Title Certificate Law" such is unnecessary to the opinion and therefore *dictum*. Be that as it may, a frank appraisal of *Clouse* indicates that it is not grounded upon a voiding of the transfer *in toto*, but only insofar as to hold the dealer's insurance carrier because the dealer failed to comply with the requirements of Section 46–150.16.[5] Moreover, the Fourth Circuit found that the South Carolina Legislature, not its courts, has formulated a state policy by which the State seeks to assure itself of continued liability coverage on a large number of secondhand cars sold throughout the State. On this basis this court perceives no intimation in *Grain Dealers* that the South Carolina Supreme Court disapproves this interpretation.

Nevertheless, defendants further contend that the following exclusion in the

---

3. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188.

4. See Kemmerlin, 1964–1965 Survey of S. C. Law, Insurance, 18 S.C.L.Rev. 68, 78 (1966).

5. See Note 1, supra.

Universal Underwriters policy would preclude liability in this case:

"PART I—LIABILITY

\* \* \* \* \* \*

"None of the following is an insured:

\* \* \* \* \* \*

"(iii) any person or organization other than the named insured with respect to any automobile (a) owned by such person or organization or by a member (other than the named insured of the same household, or (b) possession of which has been transferred to another by the named insured pursuant to an agreement of sale."

■ Section 37–141 of the 1962 South Carolina Code provides that:

"*What contracts deemed made in State.*—All contracts of insurance on property, lives or interests in this State shall be deemed to be made therein and all contracts of insurance the applications for which are taken within the State shall be deemed to have been made within this State and are subject to the laws thereof."

Under this authority, Bill Vernon Chevrolet, Inc., and Universal Underwriters cannot contract contrary to the public policy of the State as found in its insurance code. The *Clouse* interpretation of Section 46–150.16 makes this section a vital part of the State's scheme of insurance. Any part of the policy from Universal Underwriters to Bill Vernon Chevrolet, Inc., inconsistent therewith is void and the pertinent provisions of the statute prevail as much as if expressly incorporated in the policy. See Johnston v. Commercial Travelers Mut. Acc. Ass'n, 242 S.C. 387, 131 S.E.2d 91 (1963), Schafer v. Maryland Cas. Co., 123 F.Supp. 873 (1954).

■ I find and conclude that Universal Underwriters Insurance Company is primarily liable for payment of any judgment obtained by Anderson in the action arising out of the automobile collision heretofore mentioned and for such other relief to which plaintiff is entitled in that action with the resultant obligation to be fully responsible for the defense in that suit.

By stipulation the parties have not presented the question of the liability of Bill Vernon Chevrolet, Inc., and whether this defendant can be held secondarily liable or whether there could be any liability for any judgment in excess of the limits of liability in Universal Underwriter's policy or the limits of liability under the South Carolina Motor Vehicle Safety Responsibility Act in the aforementioned action need not be decided at this time and the court gives no intimation of any conclusion that could be reached as to defendant Bill Vernon Chevrolet, Inc. Let judgment be entered accordingly.

And it is so ordered.