**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Plaintiff,

v.

**Oscar T. FOMBY; Summers Enterprises, Incorporated, d.b.a. AAMCO Transmissions of Columbia, d/b/a AAMCO Automatic Transmissions; and George Pollard, Defendants.**

Civ. A. No. 67–658.

United States District Court
D. South Carolina,
Columbia Division.

April 9, 1969.

---

H. Simmons Tate, Jr., of Boyd, Bruton, Knowlton & Tate, Columbia, S. C., for plaintiff.

Phillip K. Wingard, Lexington, S. C., for Oscar T. Fomby.

Alexander M. Sanders, Jr., Columbia, S. C., for Summers Enterprises, Inc., d/b/a AAMCO Transmissions of Columbia, d/b/a AAMCO Automatic Transmissions.

## ORDER

HEMPHILL, District Judge.

Plaintiff seeks a determination of this court as to its responsibility under a garage liability policy issued to Summers Enterprises, Inc., and in force on September 3, 1966. It insists that a 1957 Chevrolet automobile, driven by defendant George Pollard, and in which defendant George Fomby was a passenger, was, on the date mentioned, owned by Pollard. Fomby sued Pollard in the Court of Common Pleas for Lexington County, S. C., seeking $120,000 damages for injuries allegedly caused by Pollard's negligence, which resulted in a wrecking of the car with both men in it. The claim of plaintiff is bottomed on the decision of the Supreme Court of South Carolina in St. Paul Fire and Marine Ins. Co. v. Boykin, S.C. (1968), 161 S.E. 2d 818. A summary of the facts is appropriate in treating the problem.

Depositions of Pollard and John Chappell Summers, Jr., President and General Manager of Summers Enterprises, Inc., reveal that, in June 1966, while Pollard was an employee of Summers Enterprises, he had no car and was spend-

ing dollars daily for transportation to and from work. Sometime during the month one Roy Metchling came to Summers Enterprises shop at 1913 Huger Street in Columbia, S. C. for correction of transmission difficulties; Summers Enterprises did specialty work in restoration and/or repair of transmissions. When the owner decided the cost of repair was not warranted he negotiated a sale to Pollard.[1] An arrangement resulted in Summers advancing the money to buy the car for Pollard, but it was registered in Summers Enterprises' name until Pollard completed paying the advanced price. Pollard completed payment to Summers on or about August 20, 1966 and was given the title certificate which he placed in the glove compartment where it remained until after the accident of September 3. Summers states he had signed the title certificate, Pollard does not remember. Pollard had the only set of keys and he never asked permission of Summers to use the car. At times, at the shop, Pollard allowed other workers to use the car on errands, but he kept the car at his home and no other person drove it after or before shop hours. Pollard bought tires and spare parts and paid a mechanic to assist in repairing the transmission. Pollard paid for the gas and oil. After the wreck Pollard failed to return to work, was replaced by Summers. He did return later and went with Summers to the State Highway Department office in Columbia to get the title registered. He was sent to get the serial number, returned to the Highway Department during the attendant's lunch hour. Some "do-gooder" advised him to drop the matter and he left papers, et cetera, on the attendant's desk and departed to return no more.

This court finds assurance and guidance in St. Paul Fire and Marine Insurance Company v. Boykin, supra, where the facts are remarkedly similar, the interpretation of the law clear, and the sad injustice of *Clouse*[2] is laid to rest. Therefore the failure to register the vehicle in Pollard's name does not negate the clear and unmistakeable effort and purpose of Summers and Pollard to buy Pollard a car. The car was always owned by Pollard. At the time of the wreck it was owned by Pollard and not by Summers Enterprises, Inc.

This Court declares that, on September 3, 1966 plaintiff was not an insurer of Pollard, nor the 1957 Chevrolet[3] in controversy, so that plaintiff has neither responsibility to defend Pollard nor to respond in any way to Fomby.

The Clerk will enter judgment accordingly.

And it is so ordered.

---

1. There is a dispute as to whether Pollard or Summers actually negotiated, but this factual issue is not critical to this determination.

2. Clouse v. Am. Mut. Liab. Ins. Co., 4th Cir., 344 F.2d 18.

3. At no time has the court been advised of identifications, such as motor number, serial number, et cetera.