# UNIVERSAL UNDERWRITERS INSURANCE COMPANY ET AL. *v.* SAMUEL A. WILSON, JR.

[No. 1333, September Term, 1975.]

*Decided September 20, 1976.*

The cause was argued before J. DUDLEY DIGGES, Associate Judge of the Court of Appeals, ▌SOLOMON LISS, Associate Judge of the Eighth Judicial Circuit, and CHARLES E. EDMONDSON, Associate Judge of the First Judicial Circuit, all specially assigned.

*George D. Solter* and *B. Ford Davis* for appellants.

*Robert E. Powell,* with whom were *Smith, Somerville & Case* on the brief, for appellee.

▌LISS, J., delivered the opinion of the Court.

On December 21, 1972, Samuel A. Wilson, Jr. (hereinafter referred to as "Wilson") was involved in an automobile accident with Linwood V. Uhler and Janet C. Uhler, his wife (hereinafter referred to as "Uhlers"), in which the Uhlers sustained personal injuries and property damage to their automobile.

Wilson, on November 29, 1971, was the manager of Bittorf Ford Sales, Inc. (hereinafter, "Bittorf"), an automobile dealership. On that date, he purchased from Bittorf for $750 a 1967 Buick LeSabre, which Bittorf had received in trade from a customer who had assigned the title in blank to Bittorf. Wilson made a down payment of $50 and executed a conditional contract of sale to Executive Cars, Inc., another Bittorf controlled company, for the balance; Bittorf retained the paper title as additional security. Bittorf permitted Wilson to use its dealer's tags during the period in which payments were to be made. Wilson used the car for his personal affairs and occasionally for Bittorf's business until mid-September of 1972, when his employment with Bittorf

terminated. Final payment on the car was made on October 10, 1972; however, Wilson continued to use Bittorf's dealer's tags, and they were still being used and displayed on the vehicle when the accident occurred.

The Uhlers filed suit for damages in the Circuit Court for Howard County against Wilson and Bittorf; and thereafter, the case was removed to the Circuit Court for Carroll County. A motion for summary judgment was filed and granted in favor of Bittorf on the ground that there was no evidence of any agency relationship between Wilson and Bittorf at the time of the accident.

Universal Insurance Company (hereinafter, "Universal") had issued to Bittorf a garage, bodily injury and property damage liability policy, the omnibus clause of which provided coverage for "any other person while actually using an automobile covered with this policy with the permission of the named insured."

Wilson filed in the Circuit Court for Carroll County this suit for declaratory judgment in which he petitioned the court to find that he was entitled to be furnished a defense by Universal in the Uhler suit against him and that he was further entitled to coverage under the liability policy.

Testimony disclosed the facts hereinbefore recited and, in addition, disclosed a dispute between Bittorf and Wilson as to the events after the final payment of the purchase price on October 10, 1972: Wilson contended that on that date, he requested the title from Mr. Bittorf but did not receive it. Mr. Bittorf said he told Wilson that as soon as his check cleared, the title would be mailed to him; he further stated that in accordance with his promise, he mailed the title to Wilson, who denied ever receiving it. The evidence further disclosed that Wilson was required to apply for a duplicate title some six months after the final payment. Mr. Bittorf also testified that both he and his son demanded the return of the dealer's tags on numerous occasions between the date of final payment (October 10, 1972) and the date of the accident (December 21, 1972), but the tags were not returned. Wilson claimed he believed the automobile was covered by Bittorf's insurance company; Mr. Bittorf said he

believed the automobile was insured under Wilson's personal automobile insurance. It is unfortunate for all the parties that Wilson had no such insurance.

In order to secure his dealer's tags, Bittorf had certified to the Motor Vehicle Administration that any vehicle displaying its dealer's tags would be covered by insurance in the amount required by the Maryland Financial Responsibility laws and that he was insured by Universal.

The law governing transactions of this nature is found in the Motor Vehicle Code. The pertinent portions are set out in Art. 66½, § 3-113 (a) and (c) of the Annotated Code of Maryland:

> "Transfer to or from dealer; records.
>
> (a) *Certificate of title to be retained by dealer.* — If the transferee of a vehicle is a registered dealer who holds the vehicle for sale, he shall retain the certificate of title in his possession. The certificate of title shall have thereon an assignment and warranty of title executed by the former owner and must be in the possession of the dealer within 10 days of the date of transfer to the registered dealer and remain therein until the further sale or transfer of ownership of the vehicle. All certificates covering vehicle held for sale shall be available for inspection by representatives of the Department and by police officers during regular business hours."

> \* \* \*

> "(c) *Transfer to one other than another dealer.* — If ownership of a vehicle held by a registered dealer for sale is transferred to someone other than another registered dealer who holds the vehicle for sale, the transferring dealer shall execute and acknowledge an assignment and warranty of title in the manner and upon the form prescribed by the Department, and in addition shall comply with the following:

1. .If the vehicle is a Class A vehicle which is to be registered and titled in this State, the transferring dealer shall obtain from the transferee the written application for a certificate of title and the prescribed fee therefor, and forward the same, together with all other documents required by § 3-104, to the Department within 10 days from the date of delivery of the vehicle; . . ."

It was conceded that Bittorf did not comply with the requirements of this statute and that at the time of the accident, the paper title to the vehicle was still registered at the Motor Vehicle Administration in the name of the prior owner with Bittorf having in its possession an assignment in blank of that title.

The trial court in its Order found that because of Bittorf's failure to comply with the requirements of the Code, it was left with an interest in the vehicle, which entitled Wilson to hold Universal responsible under the terms of the omnibus clause of Bittorf's policy for a defense and liability coverage. Thereafter, a Motion for Reconsideration was filed and granted, and memoranda were submitted. The trial court reaffirmed its original finding; and, in addition, it ruled that Universal was bound by the certification filed by Bittorf which required Bittorf to have financial responsibility insurance on any vehicle displaying its dealer's tags. It is from these orders that the appellants have filed their appeal.

The issues to be determined in this appeal are:

1) Did Bittorf at the time of the accident retain sufficient interest in or control over the vehicle on which its tags were displayed to hold Universal liable under the omnibus clause of its policy? and

2) Is Universal bound by Bittorf's certification — required by the Motor Vehicle Administration — that any vehicle upon which the dealer's registration plate is displayed will be covered by liability insurance?

The trial court, in its Order, cited a number of cases to support its conclusions. One of the cases cited was *Clouse v.*

*American Mutual Liability Insurance Co.*, 344 F. 2d 18 (1965), a South Carolina case, in which the 4th Circuit of the United States Court of Appeals reversed a District Court judgment and held that when an automobile dealer failed to comply with the statutory requirements for transferring the title of an automobile to the purchaser, the dealer was left with an interest in the vehicle which entitled the plaintiff to hold the insurer responsible under the omnibus clause of the dealer's insurance policy. The *Clouse* decision was followed in the District Court of South Carolina, Aiken Division, in *Security General Ins. Co. v. Bill Vernon Chevrolet and Universal Underwriters*, 263 F. Supp. 74 (1967), where a dealer failed to comply with the statutory requirements for transfer of title to a purchaser, and the dealer's insurer was held primarily liable for any judgment against the purchaser and was required to furnish a defense.

In *Clouse, supra,* however, the Court had left itself a fallback position. It said at page 21 of its opinion:

> "Regrettably, the Supreme Court of South Carolina has had no opportunity to pass upon the broad question of state policy which is now before us. Decisions from other jurisdictions involving different factual situations and slight differences in statutory wording and arrangement offer guidance, but of necessity cannot control the outcome here."
> See cases cited therein.

*Mirabile dictu,*[1] when the matter reached the South Carolina Supreme Court, an entirely different interpretation of state policy was enunciated: In the case of *St. Paul Fire and Marine v. Boykin, et al,* 251 S. C. 236, 161 S.E.2d 818 (1968), the Court held that the failure of an automobile dealer to comply with the requirements of the South Carolina title certificate law did not prevent title from passing to the buyer under the dealer's garage policy, thus rejecting the theory that title remained in the dealer and that the buyer was covered under the omnibus clause of the dealer's policy.

---

1. wonderful to relate

*St. Paul v. Boykin, supra,* was followed by the Federal District Court of South Carolina in *United States Fidelity and Guaranty Co. v. Fomby,* 297 F. Supp. 1153 (1969), wherein the Court said at page 1154:

> "This court finds assurance and guidance in *St. Paul Fire and Marine v. Boykin, supra,* where the facts are remarkedly similar, the interpretation of the law clear, and the sad injustice of *Clouse* laid to rest. Therefore the failure to register the vehicle in Pollard's name does not negate the clear and unmistakeable effort of Summers and Pollard to buy Pollard a car. The car was always owned by Pollard."

The facts and law in the series of South Carolina cases are strikingly similar to the case here presented, and the conclusions of the South Carolina Supreme Court are persuasive.

Appellees also cite in support of their position *Eggerding v. Bicknell,* 20 N. J. 106, 118 A. 2d 820 (1955), and *Glens Falls Ins. Co. v. Irion,* 323 F. Supp. 1164 (D.C. Mont., 1970); but an examination of these cases discloses substantial differences between the statutory provisions of N.J. and Montana and those of Maryland governing the use of dealer's tags and the failure to transfer title to a purchaser. In both cases the courts held that ownership remained in the dealer until the transfer had been completed; but Maryland, however, has not allocated the same importance to the registration of the paper title to a vehicle. It has adhered to the rule that the expressed intention of the parties as to when title is to be transferred governs. In *Inland Mutual Ins. Co. v. Stallings,* 263 F. 2d 852, 854 (4th Cir. 1959), it was held:

> "[D]elivery [of possession of an automobile] and assignment of title were sufficient to pass ownership at that time if the parties so intended, Md. Code (1957), Uniform Sales Act, Art. 83, Sec. 36 (1), even though there has not been compliance with the registration law of the state. *Hofslund v.*

*Metropolitan Casualty Ins. Co. of New York*, 7 Cir., 1951, 188 F.2d 188."

The Uniform Commercial Code was adopted in Maryland as of February 1, 1964; and Section 2-401 provides in part that "title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties." It further provides that "any retention or reservation by the seller of title (property) in the goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest."

The Court of Appeals of Maryland in *Liberty Mutual Insurance Company v. American Automobile Insurance Company*, 220 Md. 497, 500, 154 A. 2d 826, 827 (1959), in discussing the effect of title registration of a motor vehicle, held "that title registration merely raises a presumption of ownership, which, not being conclusive, is rebuttable by evidence to the contrary if such is produced." See *East Balto. Transfer Co. v. Goeb*, 140 Md. 534, 118 Atl. 74 (1922); *Epstein v. Ruppert*, 129 Md. 432, 99 Atl. 685 (1916); *Metropolitan Auto Sales v. Koneski*, 252 Md. 145, 249 A. 2d 141 (1969); 1 Blashfield, *Cyclopedia of Automobile Law and Practice* (Perm. ed. 1955), Sec. 304; 27 A.L.R. 2d 176.

In *Government Employees Ins. Co. v. Coppage*, 240 Md. 17, 212 A. 2d 523 (1964), the Court pointed out that both under the Uniform Sales Act and at common law, the expressed intention of the parties as to when title is to be transferred governs.

An examination of the transaction between Bittorf and Wilson convinces us that the parties intended ownership as well as possession of the vehicle to be in Wilson at the time the initial installment payment was made, subject to the security interest retained by Bittorf to guarantee the payment of the balance. Certainly, there can be no doubt that Wilson was the owner of the vehicle when the final payment was made on October 10, 1972, whether the title had been registered with the Motor Vehicle Administration or not.

In our review of this case, Wilson falls within the

exclusion set out in Item V. of Universal's policy, which states:

> "None of the following is an insured:
>
> (iii) any person or other organization other than the named insured with respect to any automobile
>
> (b) possession which has been transferred to another by the named insured pursuant to an agreement of sale."

Since he was excluded by the terms of this portion of the policy at the time of the accident, Wilson was not entitled to either coverage or defense by Universal.

Appellees point out that under the Maryland State Motor Vehicle Administration Rules and Regulations, Chapter 11.02.03, Dealers and Salesmen, the dealer is required to file a surety bond for the use and benefit of the agency and the public who may suffer or sustain any loss by reason of any violation of the various sections of the Motor Vehicle regulations mentioned; and it is conceded that this bond was filed by Bittorf. They also call attention to the fact that when Bittorf applied for its Vehicle Dealer's License (Form VR-55), it was required to make the following certification under the rules and regulations of the Motor Vehicle Administration:

> "In submitting this application for MVA consideration, I/we CERTIFY that all motor vehicles or trailers owned by this dealership, or under its control, on which Dealer Registration Plates are at any time to be attached, will be continuously covered by liability insurance in the minimum amounts required under the Financial Responsibility Laws of Maryland, for personal injury and property damage caused by any person, who shall use said motor vehicles or trailers with the dealership's authority."

Bittorf acknowledged making this certification and that by so doing, it had designated Universal as its insurance

carrier. Wilson urges, however, that the trial court's declaratory findings were correct because the conduct of Bittorf in wrongfully retaining the title, failing to collect applicable taxes and fees, failing to follow inspection procedures, and wrongfully issuing dealer registration plates, when considered in conjunction with the filing of the VR-55 form, amounted to a retention of dominion and control over the vehicle.

We do not agree. As we have already indicated, we hold that the intention of the parties was that Wilson was to become the owner of the vehicle when the original down payment was made. Whatever Bittorf may have done to ensure the payment of the balance of the purchase price is of no significance as to the intention of the parties as to ownership. We note also that the VR-55 certification does not appear to be incorrect. It applied to "motor vehicles or trailers owned by this dealership, or under its control, on which Dealer Registration Plates are at any time to be attached . . . ." The certification as to insurance coverage is applicable only when two conditions exist. The vehicle must be owned by or under the control of the dealer and the vehicle must have his dealer plates attached. We have already ruled that the vehicle was owned by and under the control of Wilson.

*Orders vacated, and case remanded to the Circuit Court for Carroll County for the entry of a declaratory judgment in accordance with this opinion.*

*Costs to be paid by the appellees.*