18436

GRAIN DEALERS MUTUAL INSURANCE COMPANY, Appellant, v. Charles A. JULIAN, Philip Cohen, Dinah K. Dworsky, Mary Berman, and Lumbermen's Mutual Casualty Company, Respondents.

(145 S. E. (2d) 685)

*Messrs. Leatherwood, Walker, Todd* and *Mann,* of Greenville, *for Appellant,*

*Messrs. Love, Thornton, Arnold & Thomason,* of Greenville, and *W. Jerry Fedder,* of Seneca, *for Respondents,*

December 13, 1965.

Moss, Justice.

This action is one under the "Uniform Declaratory Judgments Act", Section 10-2001, *et seq.*, 1962 Code of Laws. It is brought by Grain Dealers Mutual Insurance Company, the appellant herein, for a determination of its liability, if any, arising under a combination automobile policy issued by it, on August 3, 1961, to Charles A. Julian, one of the respondents herein.

The insuring agreement contained in said policy provides:

"1. Coverage A—Bodily Injury Liability: To pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

Attached to and forming a part of the aforesaid policy was an endorsement that:

"2. The insurance does not apply

"(a) to any automobile owned by the named insured * * *."

It is stipulated that on June 16, 1962, a 1949 Plymouth automobile operated by Charles A. Julian was in a collision on U. S. Highway 123, in the City of Easley, with a Buick automobile owned by Mary Berman, and at the time of the collision operated by Dinah K. Dworsky, in which Mary Berman and Philip Cohen, the respondents herein, were pas-

sengers; that as a result of said collision the respondents claim to have received personal injuries, the extent and nature of which are not pertinent hereto, and claim that Charles A. Julian is liable to them by reason of their injuries.

At the time of the collision which resulted in injuries to the respondents Cohen, Dworsky and Berman, there was in full force and effect an automobile liability insurance policy issued by Lumberman's Mutual Casualty Company, a respondent herein, insuring the Buick automobile belonging to Mary Berman. Attached to and forming a part of this policy was an uninsured motorist endorsement written in compliance with Sections 46-750.13 and 46-750.14 of the Code, providing for the payment, within policy limits, of all sums which the individual respondents herein named shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile. An uninsured automobile was defined in said policy as including one as to which there was a successful denial of coverage by a liability insurer.

It appears that coverage under either policy here involved was subject to a limitation of $10,000.00 for bodily injuries sustained by any one person and a maximum of $20,000.00 for bodily injuries sustained by two or more persons in any one accident. There is also a limitation of $5,000.00 for all property damage as a result of any one accident.

The controlling issue for determination is the question of ownership of the 1949 Plymouth automobile driven by Charles A. Julian at the time of the collision with the Buick Automobile owned by Mary Berman and operated by Dinah K. Dworsky. If the 1949 Plymouth automobile which Julian was driving was not owned by him, the policy of the appellant would provide liability protection to Julian for claims asserted against him by Berman, Dworsky and Cohen. If the said automobile was owned by Julian, the policy of the appellant would not afford coverage and the policy of Lumbermen's Mutual Casualty Company would provide uninsured motorist protection for the benefit of the aforesaid

injured persons. It is the contention of the appellant that Julian was the owner of the 1949 Plymouth automobile. Lumbermen's contends that the automobile was not owned by Julian at the time of the accident.

The issues made by the pleadings were referred to a special referee to take the testimony and to report to the court his findings of fact and conclusions of law. A hearing was held by said special referee and, thereafter, he filed his report finding that the 1949 Plymouth automobile was on the date of the accident owned by Julian and concluded, therefore, that no coverage was afforded under the liability policy of the appellant. Lumbermen's excepted to the said report and alleged error in finding (1) that Marion Davis executed and gave a bill of sale to Charles Julian prior to June 1962; (2) that the referee considered testimony concerning the alleged bill of sale given by Marion Davis to Charles Julian over the objection of counsel for Lumbermen's when such testimony was inadmissible; (3) that the referee erred in finding that Julian owned the 1949 Plymouth automobile when he had never received a Title Certificate from the South Carolina Highway Department; and (4) in holding, as a matter of law that it was not necessary that the owner of a motor vehicle have a Title Certificate issued by the Highway Department.

The exceptions to the report of the special referee were heard by the Honorable Frank Eppes, Resident Judge. By his order, dated November 17, 1964, he reversed the report of the special referee, holding (1) that Julian was not the owner of the 1949 Plymouth automobile at the time of the collision and liability insurance coverage was afforded under the liability policy of the appellant; (2) that the special referee committed error in considering the testimony objected to by Lumbermen's concerning a purported bill of sale by Marion Davis to Julian; and (3) that the securing of a Certificate of Title from the Highway Department was indispensable to the ownership of a motor vehicle and that a change in ownership of an automobile is not con-

94

summated until such certificate is duly assigned and delivered. This appeal followed.

Prior to Christmas 1961, one W. J. Brissey was the owner of the 1949 Plymouth automobile in question. Just before Christmas Brissey was given a 1959 Edsel automobile by his son-in-law, Marion Davis, and his daughter, Mrs. Davis. At the same time Brissey gave the 1949 Plymouth automobile to Marion Davis and he "told him he could dispose of it any way he wanted to." Brissey testified that he gave to Davis a bill of sale for the 1949 Plymouth automobile "the next week sometime." Brissey testified that after the aforesaid events he did not exercise any of the incidents of ownership or control over the Plymouth automobile nor did he maintain insurance thereon.

Marion Davis was called as a witness for the appellant and in the main confirmed the testimony of Brissey. He testified that on January 6, 1962, he sold the 1949 Plymouth automobile to Charles A. Julian. The sale price was $300.00 and it was agreed that this price would be paid in weekly installments of $12.00 each over a twenty-five week period. Julian executed to Davis a chattel mortgage on the same date creating a lien over the automobile in favor of the seller. In such mortgage, Julian represented that he was the sole owner of the automobile. Davis delivered to Julian the 1961 registration card for said automobile, the 1962 card having been lost or misplaced by Brissey. Davis testified that he prepared a bill of sale conveying the said automobile to Julian but the purchaser did not immediately pick up the bill of sale. However, following the date of the sale but prior to the accident on June 16, 1962, the bill of sale was picked up by Julian. Davis testified that after January 6, 1962, he exercised none of the incidents of ownership or control over the automobile but as far as he was concerned, the car was owned by Julian. Davis further testified that Julian paid in full the purchase price of the automobile and the chattel mortgage hereinbefore referred to was delivered to him.

The bill of sale from Davis to Julian was not produced and never offered in evidence.

Lumbermen's, through it counsel, objected to any testimony concerning the bill of sale from Davis to Julian upon the ground that the bill of sale would be the best evidence. However, during the cross-examination of Davis and without reserving the objection previously made, counsel examined Davis regarding the bill of sale. We have held that where a witness who had testified, was cross-examined without reservation on the same subject, exception to the testimony is thereby rendered untenable, and the right to challenge the ruling thereabout was thereby waived. *Richardson v. Register,* 227 S. C. 81, 87 S. E. (2d) 40; *Gary v. Jordan,* 236 S. C. 144, 113 S. E. (2d) 730. It follows that the testimony of Davis concerning the bill of sale was competent and it was proper for the special referee to consider such. The Trial Judge was in error in holding to the contrary.

The appellant alleges that the trial court erred in holding that Julian was not the owner of the automobile in question and that coverage was consequently afforded under the liability policy of the appellant. The Trial Judge held that where an automobile is sold by the owner and delivery of the possession to the purchaser thereof is made but, the assignment and delivery of the Certificate of Title is not then made, a change in the ownership of the automobile is not consummated in accordance with the provisions of the Certificate of Title law, Section 46-150 *et seq.*, of the 1962 Code, and the liability insurance policy of the appellant continued in force because Julian was not the owner of the automobile when it was involved in a collision on June 16, 1962.

It is provided in Section 46-150 of the Code that it shall be unlawful for any person to sell or offer for sale or mortgage in this State any vehicle of the type required to be registered and licensed in this State unless a Certificate of

Title has been issued therefor and is currently valid, but this provision shall not apply to dealers selling new motor vehicles.

It is provided in Section 46-150.15 of the Code, as follows:

"How voluntary transfer carried out; when transfer effective.—If an owner, manufacturer or dealer transfers his interest in a vehicle other than by the creation of a security interest, he shall, at the time of the delivery of the vehicle, execute an assignment and warranty of title to transferee in the space provided therefor on the certificate or as the Department prescribes and cause the certificate and assignment to be mailed or delivered to the transferee or to the Department.

"Except as provided in § 46-150.16, the transferee shall, promptly after delivery to him of the vehicle, execute the application for a new certificate of title in the space provided therefor on the certificate or as the Department prescribes and cause the certificate and application to be mailed or delivered to the Department.

"Except as provided in § 46-150.16, and as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with."

In many jurisdictions wherein provision is made for the issuance of Certificates of Title to motor vehicles, the sale or transfer of a motor vehicle is consummated by the assignment of the Certificate of Title to the purchaser or transferee in the method prescribed by the statute. In most of these jurisdictions, such statutory provisions are viewed as merely police measures, regulatory in character, and are not meant to establish an exclusive method of transfer of title to a motor vehicle. In other jurisdictions, however, the statutory provisions as to the assignment of the Certificate of Title to a motor vehicle upon the sale or transfer of the vehicle are viewed as absolute and mandatory and are rigidly enforced by the courts, and title does not pass without adherence to

such provisions. 7 Am. Jur. (2d), Automobiles and Highway Traffic, Section 30, page 620. 60 C. J. S. Motor Vehicles §§ 40 and 41. Therefore, this Court must determine whether compliance with the provisions of Section 46-150.15 of the Code with reference to a Certificate of Title determines ownership of a motor vehicle.

In *Lynch v. Alexander,* 242 S. C. 208, 130 S. E. (2d) 563, this Court affirmed a judgment in favor of the plaintiffs who had been awarded damages for the wrongful death and conscious pain and suffering of their intestate. Thereafter, the plaintiffs brought an action against United States Branch, General Accident Fire & Life Assurance Corporation, 4 Cir., 327 F. (2d) 328, for the purpose of determining liability between the plaintiffs' insurer and the insurance company of the dealer who had sold the automobile in question. It appears that Alexander went to one Edwards, an automobile dealer and insured with the defendant, to trade automobiles. He executed a conditional sales contract, took possession of the Chevrolet automobile in question, left his Ford automobile with Edwards, agreeing to return the next day with his title certificate to the Ford automobile and enough money to make up the cash down payment. The wreck which precipitated the award for damages occurred the same evening. The District Court held the insurer of the dealer primarily liable, which decision was reversed on appeal. At issue was the question of the ownership of the Chevrolet automobile, and the Trial Court held that equitable ownership remained in the dealer and his insurer was primarily liable. In reversing, the Court of Appeals found that Alexander was the true owner of the automobile and the defendant, as insurer, not liable because of lack of ownership in the dealer. The Court held that the words "except * * * as between the parties" modified the other provisions of Section 46-150.15 of the Code, and compliance therewith was not necessary to transfer ownership.

The case of *Bankers Ins. Co. of Pa. v. Griffin,* 244 S. C. 552, 137 S. E. (2d) 785, was an action for a declaratory

judgment to determine the rights of the parties under the terms of contracts of insurance issued by Bankers to Merdy Griffin and by Nationwide to Henry Griffin. The primary issue for determination was the question of the ownership of a 1960 Pontiac automobile. Merdy Griffin wished to purchase a 1960 Pontiac and agreed to trade with a dealer but his credit was found to be unacceptable. Henry Griffin, a brother of Merdy's was contacted and agreed to sign an accommodation note for his brother, he having acceptable credit. Title to the automobile was issued in Henry's name and so registered with the Highway Department. Merdy went to an agent of Bankers and attempted to procure an endorsement of his policy to include the 1960 Pontiac but was advised to place the insurance in Henry's name and was told to have Henry contact Nationwide, his insurer, to obtain coverage. Nationwide advised Henry that since Merdy was the real owner there was no reason why he should not be issued the endorsement. Thereafter, Merdy again went to the agent of Bankers and explained that the Pontiac belonged to him but for credit reasons title had been placed in his brother's name. Merdy's policy was endorsed showing the Pontiac as an additional insured automobile. On the same day, after the insurance had been procured, the Pontiac was involved in an accident. Bankers relied on the fact that the title as issued by the Highway Department to the Pontiac in question was in the name of Henry Griffin and contended that such is conclusive evidence that the said Pontiac was owned by Henry and not by Merdy. This Court held that Merdy was the true owner of the automobile at the time of a collision with a third party, even though title thereto was registered in Henry's name. We held that even though Section 46-150.11 of the Code provides that "[a] certificate of title issued by the Department is *prima facie* evidence of the facts appearing on it", the presumption of ownership evidenced by such certificate of title may be overcome by evidence that the true owner of the vehicle is a person other than the one in whose name such is registered.

The case of *Porter v. Hardee,* 241 S. C. 474, 129 S. E. (2d) 131, was one in which the plaintiff brought suit against Leon D. Hardee, Sr., under the family purpose doctrine, for injuries sustained while riding in an automobile, title to which was registered in his name and driven by his minor son. The evidence showed that the minor son had purchased the automobile with his own money but had placed title thereto in his father's name because of his minority. An appeal to this Court from a verdict in favor of the plaintiff was prosecuted. We held, in reversing the judgment of the lower Court, that any presumption that the father was the owner of the automobile because of the registration of title thereto in his name was clearly rebutted by the uncontradicted testimony and that the car was in fact owned by his minor· son.

In *Booth v. American Cas. Co.,* 4 Cir., 261 F. (2d) 389, it was held that where, under assigned risk plan, motorist applied for and received an operator's or nonowner's policy which excluded coverage as to any automobile owned by the named insured, and thereafter insured, while driving automobile owned by insured but registered in name of insured's sister, collided with another automobile, insurer was not liable on policy for any judgment which operator of other automobile might obtain in action arising out of the collision.

We have no statute which makes void transfers or sales of motor vehicles which are not made in compliance with the terms of the Title Certificate law. Therefore, title to a motor vehicle passes to a purchaser notwithstanding the want of compliance with the Title Certificate law.

We conclude, under the facts here disclosed, that even though Charles A. Julian did not have a Certificate of Title to the 1949 Plymouth automobile, as provided for under the Certificate of Title law, he was, in fact, the owner of the automobile in question. It follows that there was no

liability insurance coverage under appellant's policy for the reason that such did not apply to an automobile owned by Julian, who was the named insured in said policy.

The judgment of the lower Court is accordingly reversed and the cause remanded for entry of judgment in favor of the appellant.

Reversed and remanded.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.