AMERICAN INDEMNITY COMPANY, Plaintiff,

v.

RICHLAND OIL COMPANY, Inc., Finch Transportation Company, Inc., Canal Insurance Company, Edward F. Sturcken and Forte K. Taylor, Defendants.

Civ. A. No. AC–1543.

United States District Court
D. South Carolina,
Columbia Division.

Aug. 15, 1967.

---

Thomas J. Kemmerlin, of Lumpkin, Kemmerlin & Medlock, Columbia, S, C., for American Indemnity Company.

Norbert A. Theodore, Columbia, S. C., for defendants Richland Oil Company, Inc. and Finch Transportation Company, Inc.

Gene V. Pruet, of Cooper, Gary, Nexsen & Pruet, Columbia, S. C., for defendant Canal Insurance Company.

Henry H. Edens, Columbia, S. C., for defendant Edward F. Sturcken.

E. Pickens Rish, Lexington, S. C., for defendant Forte K. Taylor.

HEMPHILL, District Judge.

On August 3, 1965 motions for summary judgment were suspended for further discovery. It has been completed and there remains no genuine issue as to any material evidentiary fact. The matter is proper for summary judgment. The motions by American Indemnity Company and by Canal Insurance Company were renewed and argued before me at Charleston on April 19, 1967.

There is no dispute as to jurisdiction and I find that there is complete diversity of citizenship and that the amount in dispute exceeds the jurisdictional amount.

An accident between defendants Sturcken and Forte and a tractor-trailer operated by Richland Oil underlies this action for a declaratory judgment as to liability coverage for the tractor-trailer. Although the evidentiary facts are not disputed there is a question whether Richland Oil or Finch Transportation Company owned the tractor involved in the accident. American Indemnity is the liability carrier for Richland Oil: Canal is the liability carrier for Finch Transportation.

### I. The Companies

Finch Transportation and Richland Oil are small closely held corporations. They utilize many common facilities but they are maintained as separate organizations. Finch was organized for long-haul operations and Richland Oil was organized for short-haul operations as a fuel oil dealer. Henry Finch is the president and chief executive officer of both corporations and he holds[1] 68 of 70 shares of Finch and 1 of 250 shares of Richland

Oil.[2] There are no other officers or shareholders which are common to both organizations.

### II. The Canal Policy

Finch Transportation owned two 1960 GM tractors and a few other units of rolling stock. They were insured by Canal Insurance Company with an "Endorsement for Motor Vehicle Carrier Policies of Insurance for Public Liability and Property Damages under Section 58–1481, South Carolina Code, 1952, as amended." That policy provided under "declarations" that the named insured was the sole owner unless otherwise stated. The policy further provided that "assignment of interest under this policy shall not bind the company until its consent is endorsed hereon." The Canal policy further excluded liability coverage "while the automobile is used for the towing of any trailer owned or hired by the insured and not covered by like insurance in the company." (The pertinency of these provisions will become more apparent, however I find these facts specially.)

The Canal policy also bore an endorsement which is as follows:

In consideration of the premium charged for the policy to which this endorsement is attached, it is understood and agreed that no coverage is extended to any person, firm or organization using the described automobile pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract or agreement either written or oral, expressed or implied, the terms and provisions of the Insuring Agreement III, entitled "Definition of Insured" notwithstanding.

### III. The American Indemnity Policy

Richland Oil held a Fleet Policy from American Indemnity Company. This policy had an automatic coverage en-

---

[1]. The position of Mr. Henry Finch in these companies is given as of June 10, 1963, the date that Richland Oil Company allegedly acquired the tractor which was involved in the wreck.

[2]. See footnote 1, supra.

dorsement which provided in part as follows:

1. Definitions. The words "owned automobile" shall mean a land motor vehicle, trailer or semitrailer owned by the named insured. The word "automobile" wherever used in the policy with respect to the insurance afforded under this endorsement, shall include "owned automobile."

2. Application of Insurance. The insurance applies to all licensed owned automobiles and to all owned trailers, including such automobiles acquired during the policy period, used for the purposes stated in the policy. The definitions in the policy of "commercial and pleasure and business" apply respectively to automobiles of the commercial or truck type and to automobiles of the private passenger type except as otherwise provided.

3. Premium. The premium basis for this insurance is per automobile. The premium stated in the declaration is an estimated premium only and except where specifically stated to the contrary, the premium reduction percentage is applicable to the premium for each automobile insured hereunder. Upon termination of the policy, the earned premium shall be computed in accordance with the rules, rates, rating plans, premiums and minimum premiums applicable to this insurance. If the earned premium thus computed exceeds the estimated advance premium paid for this insurance, the named insured shall pay the excess to the company; If less the company shall return to the named insured the unearned portion paid by such insured.

4. Inspection and Audit. The company shall be permitted to inspect the insured automobiles and to examine and audit the insured's books and records at any time during the policy period and any extension thereof and within three years after the final termination of the policy, as far as they relate to the premium basis or the subject matter of this insurance.

The American Indemnity policy also excluded liability coverage "while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the Company."

American Indemnity filed with the Public Service Commission a certificate of Motor Carrier Bodily Injury, Liability and Property Damage Certificate of Insurance for Richland Oil to be effective from September 6, 1963 to September 6, 1964. This certifies that there is in force the endorsement required by law for operations under a certificate of public convenience and necessity. The requirements of that endorsement had been amended so as to make it "regardless of whether such motor vehicles are specifically described in the policy or not." See S.C.Code Ann. sections 58–1401 and 58–1501 (1962).

Richland Oil was not a holder of a certificate of public convenience and necessity, but they had contracted with a holder of a Certificate to operate under it.

IV. Richland Oil Company's
Possession of the Tractor.

On December 13, 1963, the date on which the accident occurred, there is no doubt that it was being operated by the servant of Richland Oil Company within the scope and course of his employment. He was about the business of Richland Oil. Canal refused to defend under the circumstances. American Indemnity refused to defend on the grounds that the tractor was owned by Richland Oil, that Richland Oil had acquired the tractor on June 10, 1963 from Finch Transportation, and that the tractor was at the time of the accident owned by Richland Oil but uninsured under the American Policy for not having been declared on the fleet schedule. The tractor was not in fact declared on the American schedule but it was in fact listed on the schedule of the Canal policy issued to Finch Transportation.

It is not possible on the evidence available to reconstruct with precision exactly

the processes by which Richland took its interest in the tractor. It is most unlikely that any further evidence could be elicited in view of the time that has already passed since the litigation began. What facts are shown by the record are not explained nor, however, are they disputed. I am of the opinion that the evidence is sufficient for an adjudication of the ownership of the tractor and its effect upon these insurance policies.

Finch Transportation allegedly transferred two 1960 GMC tractors, N2173J and N2174J, to Richland Oil on June 10, 1963. Tractor N2174J was subsequently involved in the accident. Richland Oil paid over to Associates Discount Corporation $10,919.65 allegedly in consideration for the two tractors. Of that amount $6389.32 was said to represent payment of the balance due on a mortgage on N2174J given by Finch Transportation. Whether a bill of sale was drawn at the time cannot be determined. Henry Finch states that he is unsure, but that he thinks one was drawn but it had been lost. The tractor was placed on the books of Richland Oil from that time. Richland Oil subsequently claimed depreciation credits for the tractor, however the tax return was filed at some time after the date of the accident. Richland Oil, according to Henry Finch, was considered the owner of the tractors, however Finch Transportation Company continued to use the tractor occasionally.

However, no formal transfer of the tractor was made: the certificate of title remained in the name of Finch Transportation until February 14, 1964. On the application for the certificate of title dated December 31, 1963 Bevan Funderburk swore on behalf of Richland Oil as the owner that Richland Oil had acquired the tractor on "12–19–63." This date is six days after the occurrence of the accident. I note that Bevan Funderburk, who then acted for Richland Oil, was on June 10, 1963, the time of the alleged sale, a shareholder and vice-president of Finch Transportation Company. There was a bill of sale conveying the tractor N2174J to Richland Oil from Finch Transportation which was signed by Henry Finch for Richland Oil and Bevan Funderburk for Finch Transportation. This document was sworn to and subscribed on December 19, 1963. The testimony of Henry Finch, however, is that the sale had been made on December 10, 1963 but that it had not been sworn to and subscribed until December 19, 1963. This proliferation of dates as to the time title passed becomes increasingly enigmatic. There is other evidence bearing on this point. It is agreed that at no time prior to the accident on December 13, 1963 did anyone notify Canal Insurance Company that the tractor had been transferred to Richland Oil. This is a requirement as we have seen of the Canal policy. On September 17, 1963, three months after the purported transfer to Richland Oil, Finch Transportation Company applied for and received a license on the tractor. That application listed the tractor as being covered by the Canal policy. The tractor N2174J was in fact listed on Finch Transportation Company's fleet schedule for the Canal policy. Why Henry Finch as chief executive of both of these companies would sell the tractor and not notify the vendor company's liability carrier in accord with the terms of that policy, if he in fact did so, is not known. Why Finch Transportation Company would apply for a license in September on a tractor they had allegedly sold in June is likewise unexplained.

A further anomaly is that Finch Transportation was sold in October 1963, after the purported sale of the tractor and before the accident, and the tractor N2174J was not included in the assets.

The case of the other tractor, N2173J, is not in the least so confounding. Richland Oil declared it on the American Indemnity fleet schedule and so far as it can be determined, the transfer was regular.

The payment of the mortgage balance to Associates Discount in June is the only "hard" evidence tending to prove a sale at that time. The other records belie the

testimony that the sale was made in June. At the deposing of Mr. Henry Finch the following exchange took place.

> Finch: In June of 1963 we paid off all of our interest-bearing obligations.
>
> Counsel: Who is "we"?
>
> Finch: Richland Oil Company, and also at the same time we paid off the obligation of Finch Transportation.
>
> \* \* \* \* \* \*
>
> Counsel: And at the time you transferred title to this GMC tractor we are talking about, or you transferred the tractor on your books to Richland Oil Company? (Sic.)
>
> Finch: We made a book entry to Richland Oil Company, since they actually had the investment in the tractor from the check, we made the book entry, but we did not transfer the truck to Richland Oil Company.
>
> \* \* \* \* \* \*

Referring to depreciation and investment credits taken on the tractor by Richland, the following ensued:

> Finch: I considered that Richland Oil Company had an investment in the tractor, and therefore would be entitled to the investment credit and the depreciation, but the tractor was still being operated by Finch Transportation, and occasionally Richland Oil, both.
>
> \* \* \* \* \* \*

Mr. Finch also stated in his deposition that the driver of the tractor that day was hired by Finch, but that like all Finch employees, Richland Oil paid their checks, withheld their taxes, and then billed Finch Transportation Company for the amount of the employees' gross pay.

In view of the evidence before me, I conclude as a matter of law that Finch Transportation Company never accomplished divestiture of the tractor N2174J. No outright sale of ownership was ever completed. If Mr. Finch had intended to make an absolute conveyance of own-

ership the case would be stronger in favor of finding a sale, but even then the documentary evidence would overwhelmingly militate against it. However, Mr. Finch's response to the questions put to him show that his intentions were not clearly that he intended to sell the tractor, but, to the contrary, that his intentions were motivated by factors unknown to us, and that in his mind the Richland Oil Company and the Finch Transportation Company were practically the same. They were tools he used to further common purposes at times, and this he did with a signal lack of orderliness and propriety.

■■■ Under the law of South Carolina the certificate of title is not determinative of ownership in transfers between private parties where actual ownership can be shown, but the certificate of title is prima facie evidence of the facts appearing on it. S.C.Code Ann. § 46–150.11 (1962). The presumption of ownership created in the title holder may be overcome by evidence that the true owner is someone else. E.g. Grain Dealers Mut. Ins. Co. v. Julian, 247 S.C. 89, 145 S.E.2d 685 (1965); Bankers Ins. Co. v. Griffin, 244 S.C. 552, 137 S.E.2d 785 (1964). There is no question that Richland Oil acquired true ownership of the tractor at some time. The evidence must be weighed, however, as it is relevant to true ownership as of the date December 13, 1963.

■ I conclude from the evidence in this case that the presumption has not been overcome, and that the preponderance of the evidence shows that no transfer of title was accomplished as of December 13, 1963 when the accident occurred.

■■■ The affidavit of Henry Finch —that he considered the tractor as being Richland's—is subjective, of course, and in the circumstances of this case, not conclusive as to the legal status of the tractor.[3]

■ I further conclude that the tort action by Mr. Sturcken against Richland

---

3. Ordinarily a witness would not be allowed to testify as to his conclusion of ultimate fact or matters of law, therefore his offer of the statement is likewise certainly not conclusive. See 29 Am.Jur.2d Evidence § 604 (1967).

Oil is not conclusive on the question of ownership of the tractor in this case. The precise issue was not involved in the tort action. Liability there could be found against Richland Oil without the necessity of their having title to the tractor.

## V. Insurance Coverage.

### A. The Canal Policy

■ I conclude that the Canal policy did not provide liability coverage for the accident even though Finch Transportation Company, the insured was the owner in fact of the tractor. No assignment of interest was consented to and endorsed by the insurer. The effect of that is merely problematic at this point, and it is unnecessary to go into it further. I rule that the endorsement excluding coverage of the use of automobiles subject "to any lease, contract of hire, bailment, rental agreement or any similar contract or agreement either written or oral, expressed or implied" effectively operated to exclude coverage in this case.

### B. The American Indemnity Policy

The American Indemnity Company admits liability for the trailer involved in the accident but denies liability for the tractor. They allege that Richland Oil Company was in fact the owner of the tractor, and they base their denial of coverage on the fact that the tractor was not declared on the fleet schedule under the policy.

As I have found that Richland Oil was not the owner of the tractor, this argument is not applicable. It would not be premised on the facts.

■ The American Indemnity policy excludes liability coverage "while any trailer covered by this policy is used with any automobile owned or hired by the insured and not covered by like insurance in the company." It has been strenuously argued by the defendant Strucken that Finch Transportation Company owned

the tractor and that therefore this exclusion would not apply and the trailer would be covered by American Indemnity Company. I reject the argument. I am of the opinion that the exclusion would apply in this case to exclude the non-owned tractor as being a hired automobile which was not covered by like insurance in the company.

The definition of a "hired automobile" has been included in other insurance policies as meaning a "trailer * * * used under contract in behalf of, or loaned to, the named insured." See Mountain States Mut. Cas. Co. v. Barsh, 330 F.2d 200 (5th Cir. 1964).[4] This policy however does not contain that specific definition: it merely excluded "owned or hired" automobiles. Cf. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Hartford Acc. & Indem. Co., 310 F.2d 618 (4th Cir. 1962). There is no direct evidence that Richland Oil Company paid over any compensation to the Finch Transportation Company in the manner of hiring the tractor under contract. The circumstantial evidence draws one inevitably to the conclusion that there was. The tractor was placed in the possession of one company managed by Henry Finch from another company managed by Henry Finch. Richland Oil issued its check to Associates Discount corporation. It is illogical to think that the use of this capital investment was to be offered gratuitously. The evidence shows that it was not purchase money. Had there been a completed sale of the tractor to Richland Oil, as Henry Finch maintains he intended, the exclusion would unquestionably apply.

## Conclusion

Insurance protection for certain of the risks of modern life gives men the security and the confidence to strive for greater achievement. It is sad to see a program breakdown as it happened here. A look at the Richland Oil fleet schedule

---

4. In Mountain States Mut. Ins. Co. v. Barsh, 330 F.2d 200 (5th Cir. 1964), the same exclusionary clause was interpreted as follows: "Plainly, the policy and the endorsement did not apply unless both the tractor and the trailer were covered by like insurance in the same company." 330 F.2d at 202.

gives some indication of the manager's responsibility. The company produced $800,000 to $900,000 gross revenues annually. Yet, the tractor and the trailer involved were operated so as to invoke the exclusions of both policies just as effectively as if it had been done by design.

The motion for summary judgment of Canal Insurance Company is hereby granted. It is not required to defend or to respond to any judgments which have been entered or which may arise from the accident in question.

The motion for summary judgment of the American Indemnity Company is hereby granted. It is not required to defend or to respond to any judgments which have been entered or which may arise from the accident in question.

And it is so ordered.