0584

STATE AUTO INSURANCE CO., Plaintiff, v. Nolen STUART, Walter Stuart, James S. McCraven as Guardian *ad Litem* for Timothy Mc-Craven, Jean P. Roberts, as Guardian *ad Litem* for James A. Faust, Nolen Stuart, Jr., Ralph A. Pendergrass, Woodrow M. Price, William J. Price, and Nationwide Insurance Company, Defendants, of whom Nationwide Insurance Company is Appellant, and Nolen Stuart, Walter Stuart, James S. McCraven, as Guardian *ad Litem* for Timothy Mc-Craven, Jean P. Roberts, as Guardian *ad Litem* for James A. Faust, Nolen Stuart, Jr., Ralph A. Pendergrass, Woodrow M. Price, and William J. Price are Respondents.

Appeal of NATIONWIDE INSURANCE COMPANY

(337 S. E. (2d) 698)

Court of Appeals

*Arthur Lee Gaston* of *Gaston, Gaston & Marion,* Chester, *for appellant.*

*Earl R. Gatlin* of *Hayes, Brunson & Gatlin,* Rock Hill, *for respondents.*

Heard Oct. 24, 1985.

Decided Nov. 25, 1985.

GOOLSBY, Judge:

In this declaratory judgment action brought by the plaintiff State Auto Insurance Company, Nationwide Insurance Company appeals the holding of the trial judge, sitting without a jury, that Nationwide provides primary liability coverage for an automobile involved in a motor vehicle accident and operated by the respondent Ralph A. Pendergrass. The questions on appeal relate to the sufficiency of the evidence to support the findings made by the trial judge concerning the ownership of the car and to the admission and exclusion of certain evidence. We affirm.

On November 20, 1981, Pendergrass collided with an automobile operated by the respondent Walter Stuart. Pendergrass was driving a 1973 Chevrolet loaned to him by his girl friend, Annie C. Backstrom.

At the time of the collision, an automobile liability insurance policy issued by Nationwide to James Cole, Backstrom's brother-in-law, listed the Chevrolet as an insured vehicle. The policy also identified Backstrom as the principal driver of the Chevrolet. A State Auto liability policy covered Pendergrass' own car, a 1968 Mercury, which was then in the shop being upholstered.

Records of the South Carolina Department of Highways and Public Transportation did not show Cole held title to the Chevrolet on the date of the accident.

The trial judge based his holding that Nationwide provides primary coverage for the Chevrolet on his finding that Cole was the owner of the car on the date the wreck occurred.

I.

Nationwide contends the policy issued by it to Cole and describing the automobile in question did not afford coverage in this instance because Cole did not own the automobile on the date of the collision.

Ordinarily, the issue of an automobile's ownership in a coverage case is a question of fact. *See, e.g., Grain Dealers Mutual Insurance Company v. Julian,* 247

S. C. 89, 145 S. E. (2d) 685 (1965). The determination of the question of ownership depends on the particular facts and circumstances involved in the case. 7 Am. Jur. (2d) *Automobile Insurance* § 134 (1980). A certificate of title to an automobile is simply *prima facie* evidence of ownership and, therefore, is not conclusive of the issue. *Tollison v. Reaves*, 277 S. C. 443, 289 S. E. (2d) 163, (1982); *see* S. C. Code of Laws § 56-19-320 (1976).

In an action tried at law before a trial judge alone in which the ownership of a motor vehicle is at issue, the factual findings of the trial judge regarding the ownership of the motor vehicle will not be disturbed on appeal unless there is no evidence that reasonably supports the trial judge's findings. *See Bankers Insurance Company of Pennsylvania v. Griffin*, 244 S. C. 552, 137 S. E. (2d) 785 (1964). We therefore examine the record to determine whether there is any evidence to support the trial judge's finding that Cole, at the time of the collision, owned the automobile in question.

C. J. Tanner testified he purchased the Chevrolet for his wife and put the title to the car in her name. His wife, however, did not like the automobile. So, he mailed the title to the Department requesting it to retitle the car in his name. But before the Department returned the title to him, Tanner sold the Chevrolet to Cole, a fishing buddy.

Cole testified he bought the car for Backstrom. Tanner corroborated Cole's testimony in this regard as did Carolyn Carraway, the loan officer of the bank that financed the automobile.

The bank, according to Cole, Tanner, and Carraway, loaned Tanner the money with which Cole could buy the Chevrolet because Cole could not qualify for a car loan. Backstrom, Cole testified, was unemployed at the time.

Although the bank held Tanner responsible for the payments on the note, Carraway testified "it was understood" between Tanner and Cole that Backstrom would actually make the payments. Tanner and Cole testified, however, that Cole agreed to make any payments Backstrom missed. Cole also stated he intended to remain the owner of the automobile until Backstrom paid the car loan off. Tanner and Cole both attested the debt was still outstanding when the collision occurred.

Tanner and Cole each testified that Tanner, upon the sale of the car, transferred ownership of the Chevrolet to Cole by issuing Cole a bill of sale.

Cole testified he and Backstrom went to the office of Nationwide's agent shortly after Cole purchased the Chevrolet and added it to an existing liability insurance policy Cole had with Nationwide. He said he listed Backstrom as the Chevrolet's principal driver. Nationwide's agent, George R. Fleming, testified at one point that had Backstrom secured insurance in her own name the premium would have been less than the premium Cole was required to pay for adding another automobile to his policy.

The investigating patrolman testified he determined Cole owned the car involved in the collision. He further testified Cole, following the accident, signed the form required by the Motor Vehicle Financial Responsibility Act. S. C. Code of Laws §§ 56-9-10 *et seq.* (1976).

Cole testified the Department returned the title to the Chevrolet to Tanner after the accident. He also testified Tanner thereupon transferred the title to him.

Obviously, the evidence sustains the trial judge's finding that Cole owned the Chevrolet on the date of the accident.

## II.

Nationwide also complains about two of the trial judge's evidentiary rulings.

Nationwide first questions the admission of the testimony from Tanner concerning his assignment to Cole of the title to the Chevrolet. It argues the trial judge admitted the evidence in violation of the best evidence rule.

Even if the evidence were erroneously admitted, and we do not hold it was so, its admission affords no basis for reversal. Tanner's testimony was cumulative of testimony given earlier by Cole without objection that Tanner sometime after the accident signed the title to the Chevrolet over to him. *See Clark v. Ross,* 284 S. C. 543, 328 S. E. (2d) 91 (Ct. App. 1985).

Nationwide next questions the trial judge's refusal to admit Department records to prove Tanner had not transferred the Chevrolet's title to Cole as of the date of the accident.

No one, however, disputed the fact that the Department records were not changed before the accident to reflect Cole

as the Chevrolet's owner. Cole conceded Tanner did not receive the title back from the Department and did not assign it to him until after the accident.

Nationwide, therefore, suffered no prejudice by the trial judge's refusal to allow the records in evidence.

Reversible error cannot be predicated upon the exclusion of evidence that either is provided by another witness or is otherwise established. *See Peagler v. Atlantic Coast Line Railroad Co.*, 234 S. C. 140, 107 S. E. (2d) 15 (1959); *Lundy v. Southern Bell Telephone and Telegraph Co.*, 90 S. C. 25, 72 S. E. 558 (1911); *Mitchell v. Gay*, 111 Ga. App. 867, 143 S. E. (2d) 568 (1965).

Affirmed.

SANDERS, C. J., and CURETON, J., concur.