524 S.E.2d 630

James E. PENNELL, Guardian ad Litem for James E. Pennell, II, Francis T. Owens, Guardian ad Litem for Sunny Leighann Owens, Augusta J. Sitton, Jr., Guardian ad Litem for John Joseph Sitton, and John M. Ross for James Tyler Ross, Respondents,

v.

Katherine Cole FOSTER, Leasing Associates, Inc., Southern National Bank of North Carolina (Now BB & T), Southern National Leasing Corporation (Wholly owned by Southern National Bank), BB & T Leasing Corporation (f/k/a Southern National Leasing Corporation) BB & T, Pennsylvania National Mutual Casualty Insurance Company, St. Paul Fire & Marine Insurance Company; Selective Insurance Company, Allstate Insurance Company, United Services Auto Association, CNA Insurance Company f/k/a Continental Insurance Company, Defendants,

of whom, Pennsylvania National Mutual Casualty Insurance Company is, Primary Appellant,

and

St. Paul Fire & Marine Insurance Company is, Secondary Appellant,

and

Katherine Cole Foster, Leasing Associates, Inc., Southern National Bank of North Carolina (Now BB & T), Southern National Leasing Corporation (Wholly owned by Southern National Bank), BB & T Leasing Corporation (f/k/a Southern National Leasing Corporation) BB & T, Selective Insurance Company, Allstate Insurance Company, United Services Auto Association, CNA Insurance Company f/k/a Continental Insurance Company, are, Respondents.

No. 3075.

Court of Appeals of South Carolina.

Heard Sept. 10, 1999.

Decided Nov. 22, 1999.

10

F. Barron Grier, III, and Deborah Harrison Sheffield, both
of Grier Law Firm; and Charles E. Carpenter, Donald V.

Richardson, Georgia Anna Mitchell and S. Elizabeth Brosnan, all of Richardson, Plowden, Carpenter & Robinson, all of Columbia, for appellants.

Thomas W. Dunaway, III, of Dunaway & Associates; George L. Sands; Raymond A. Tate, Jr., of Doyle & O'Rourke; and Robert L. Waldrep, Jr., of Waldrep & Stoddard, all of Anderson; and Thomas E. Hite, Jr., of Hite & Pruitt, of Abbeville; and Michael S. Church, of Turner, Padgett, Graham & Laney; and Steven B. Licata, of Husman, Licata & Steele, both of Columbia; and David L. Moore, of Love, Thornton, Arnold & Thomason, of Greenville, for respondents.

HOWARD, Judge:

This declaratory judgment action was brought to determine which of the captioned insurers provides coverage for injuries sustained by passengers in a one car accident. The trial court found both Penn National Mutual Casualty Insurance Company (Penn National) and St. Paul Fire & Marine Insurance Company (St. Paul) to be primary liability carriers, and determined both carriers must defend and indemnify their insureds based on the allegations of negligence of Katherine Foster, the driver. Both Penn National and St. Paul appeal. The remaining named insurers are alleged to provide underinsured or uninsured coverage to various parties which may be affected by the decision as to primary coverage in this case. We affirm in part, and reverse in part.

## FACTS [1]

Leasing Associates, Inc. (LAI), a business which leased and sold cars, was the registered owner of an inventory of vehicles, including a 1986 Ford Bronco. LAI maintained a Garage Liability policy with Penn National. On May 16, 1994, LAI entered into a Plan and Agreement of Reorganization with Southern National Bank of North Carolina (the Bank) whereby the assets of LAI were purchased and transferred to the Bank's wholly owned subsidiary, Southern National Leasing Corporation (SNLC). The reorganization agreement was

---

1. The parties stipulated to these facts.

adopted, ratified, and approved by LAI's Board of Directors on May 25, 1994.[2] The agreement provided that LAI would not dissolve for a period of one year without the Bank's consent.

As part of the acquisition, the Bank executed an Assumption of Liabilities which provides:

Pursuant to the Plan and Agreement of Reorganization dated as of May 16, 1994, by and between Bank and [LAI] (hereinafter "Leasing"), Bank hereby assumes the obligations, contracts and liabilities (herein the "Liabilities") set forth on "Schedule 2" attached hereto[3] and incorporated herein by reference. The Bank hereby agrees to be responsible for and to perform and discharge, and to indemnify [LAI] against, the Liabilities.

The closing took place on June 6, 1994, at which time SNLC acquired substantially all of the assets of LAI.[4] The 1986 Bronco which was involved in the collision giving rise to this litigation was among the assets transferred. Thereafter, SNLC continued to operate the business. Both the Bank and SNLC were insured by an Auto Liability Protection Policy with St. Paul. Although SNLC acquired the Bronco after the effective date of the St. Paul policy, it did not notify St. Paul of the acquisition.

John Robert Foster, Jr. (Mr. Foster), was the general manager for LAI until the closing, and was thereafter employed by SNLC. Mr. Foster decided to purchase a vehicle for his daughter, Katherine, as she attained the age of sixteen. Mr. Foster allowed his daughter to test drive various vehicles from SNLC's lot. Ultimately, they settled upon the Bronco. Throughout the week of September 9, 1994, Katherine kept the Bronco for her personal use, though Mr. Foster had not purchased it. Katherine, though quickly approaching sixteen, was still fifteen years old and possessed a restricted driver's license requiring her to drive under supervision after 8:00 p.m. On September 9, after 8:00 p.m. and without supervision,

---

2. Pursuant to the reorganization agreement, the Bank exchanged its voting stock for all of the assets of LAI.

3. Schedule 2 is not in the record on appeal.

4. The Bank transferred the assets to its subsidiary SNLC.

14

Katherine and her passengers proceeded in a course of conduct that ultimately resulted in a single-car accident.

The accident report listed LAI as the owner of the Bronco. The Bronco was operated under a dealer's license plate registered to LAI. When Penn National purchased the Bronco as salvage, LAI was listed as the seller on the Application for Certificate of Title/Registration. As a result of the accident, Foster's passengers, Pennell, Owens, Sitton, and Ross, initiated tort actions against Katherine Foster, LAI, and SNLC.

A dispute arose between Penn National and St. Paul as to which carrier was responsible for the defense of the tort actions, which led to this declaratory judgment action. The parties stipulated to the above recited facts, leaving the inferences to be decided by the trial court sitting without a jury. The trial court found: 1) Foster had permission from her father to drive the Bronco on the day of the wreck; 2) LAI had an insurable interest on the day of the wreck notwithstanding the transfer of assets to SNLC; 3) LAI and SNLC each provided insurance for "owned" vehicles, and therefore, both Penn National and St. Paul were primary insurers. Both insurers appeal. We affirm in part and reverse in part.

## STANDARD OF REVIEW

A declaratory judgment action to determine which of two insurers has primary liability coverage is at law. *Unisun Ins. Co. v. First Southern Ins. Co.*, 314 S.C. 54, 443 S.E.2d 808 (Ct.App.1994), *aff'd as modified*, 319 S.C. 419, 462 S.E.2d 260 (1995). A declaratory judgment action to determine the coverage under an insurance policy's omnibus clause is an action at law. *United States Fire Ins. Co. v. Macloskie*, 320 S.C. 459, 465 S.E.2d 759 (Ct.App.1995). An action to declare excess or secondary liability coverage is an action at law. *State Auto Prop. & Cas. Ins. Co. v. Gibbs*, 314 S.C. 345, 444 S.E.2d 504 (1994). In an action at law tried without a jury, findings of fact made by the trial court have the same force and effect as those of a jury; that is, the court's findings will not be disturbed on appeal unless without evidence which reasonably supports the judge's findings. *Townes Assocs. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976).

## PENN NATIONAL'S APPEAL

### I.

■ On appeal, Penn National argues there is no coverage for Katherine Foster under the policy issued to LAI because Foster was not an "insured" as defined under the policy. The policy defines the "insured" to include "[a]nyone else while using with [LAI's] permission a covered 'auto' [LAI] own[s], hire[s], or borrow[s] ...." Because the Bronco was no longer owned by LAI as a result of the asset transfer (there is no issue that the vehicle was hired or borrowed), Penn National asserts Katherine Foster was not within the definition of an insured. Though the trial court did not rule LAI owned the vehicle the court held they had an "insurable interest", and thus, coverage was still in effect covering the vehicle, and therefore, Katherine. We agree with Penn National.

■ The issue of ownership is a question of fact for purposes of coverage under insurance policies. *South Carolina Farm Bureau v. Scott,* 274 S.C. 264, 262 S.E.2d 739 (1980). The determination depends on the specific facts and circumstances of the case in question. *Id.* Though a certificate of title constitutes prima facie evidence of ownership for purposes of insurance coverage, this presumption can be rebutted by evidence establishing someone other than the titleholder is the true owner. *Tollison v. Reaves,* 277 S.C. 443, 445, 289 S.E.2d 163, 164 (1982).

In *Unisun Ins. Co. v. First Southern Ins. Co.,* 319 S.C. 419, 462 S.E.2d 260 (1995), our supreme court was faced with a similar fact situation. We believe *Unisun* provides guidance here. In *Unisun,* the driver of a Subaru automobile, named Peters, was at fault in an accident. Peters' use of the Subaru arose from an agreement negotiated between Peters' father and Subaru Center as a part of the father's sale of the Subaru dealership. Under the agreement, Peters' father received the use of three new vehicles per year for ten years. The certificates of origin on the untitled vehicles remained in Subaru Center's name, and as each vehicle accumulated 6000 miles, they were exchanged for new ones, and Subaru Center then sold them as demonstrators, retaining all of the sales proceeds. Peters' father maintained his own automobile liabil-

ity policy which named him as the insured even though the agreement obligated Subaru Center to maintain insurance. Subaru Center maintained a dealership policy covering the vehicles, on which it was the named insured. After both insurers settled the underlying tort action, the father's insurer sued the dealership's insurer seeking to recover its portion of the settlement. The supreme court found the Subaru Center was the sole owner of the Subaru reasoning:

> This Court had held that under certain circumstances, someone other than the actual titleholder should be deemed the owner for insurance purposes. In those cases, however, the owner's failure's to hold title (or its equivalent) resulted from mere technicalities. *See, e.g., Tollison v. Reaves*, 277 S.C. 443, 289 S.E.2d 163 (1982) (finding person "true owner" of automobile titled to his mother, because person considered himself the owner, made the down payment and all other payments on the automobile, held his own insurance on automobile, and had sole possession); *Grain Dealers Mut. Ins. Co. v. Julian*, 247 S.C. 89, 145 S.E.2d 685 (1965) (holding a person not holding title was true owner where person had purchased and paid for automobile and possessed a bill of sale); *State Auto Ins. Co. v. Stuart*, 287 S.C. 235, 337 S.E.2d 698 (Ct.App.1985) (person not holding title found to be owner of car where titleholder had loaned that person money to purchase car, had issued bill of sale, and had transferred possession).

> Here, Peters' failure to hold the Certificate of Origin for the Subaru was not a mere formality. In fact, his "exclusive possession and control" of the vehicle was only temporary, as he had a duty to return the vehicle to Subaru Center after the car reached 6,000 miles. Peters had no duty to maintain insurance on the automobile. Upon the sale of the vehicle, Subaru Center was entitled to all the proceeds. These facts clearly distinguish this case from prior cases in which a person not holding title to an automobile nevertheless was found to be the true owner. Because there are no facts reasonably supporting a finding Peters owned the Subaru, the Court of Appeals correctly found Subaru Center was the sole owner.

*Id.* at 424, 462 S.E.2d at 262–63.

In *Unisun* the supreme court recognized that Subaru Center's entitlement to the proceeds upon sale, reservation of

ultimate possession and control over the vehicles, and undertaking to provide insurance were factors leading to the conclusion that Subaru Center was the owner of the vehicle involved in the collision. Coupled with the prima facie evidence of ownership by virtue of holding the certificate of origin, the supreme court found no evidence reasonably supporting the trial court's inference of co-ownership.

In this case the parties stipulated that "[t]he Bronco Katherine Foster was driving at the time of the accident was included on a list of assets transferred from LAI to SNLC on June 6, 1994, as part of the fleet of 37 automobiles conveyed to it by LAI." This stipulation referenced a "Bill of Sale and Assignment dated June 6, 1994, with Schedules of Assets." The Bill of Sale and Assignment stated, in pertinent part: "[f]urther, Assignor agrees and represents to Bank and Assignee that Assignor will execute such documents and take such actions as may be necessary or convenient to effect the transfer of title in the assets." LAI was only temporarily listed as the owner, until the proper paperwork was completed. The parties further stipulated that SNLC continued to operate the business of selling and leasing automobiles, and SNLC maintained sole possession of the Bronco. Furthermore, SNLC was entitled to the proceeds from sale of the transferred vehicles, including the Bronco.[5]

Under the unique circumstances of this case, we find the presumption of LAI's ownership as titleholder was clearly rebutted. *See Grain Dealers Mut. Ins. Co. v. Julian,* 247 S.C. 89, 145 S.E.2d 685 (1965)(holding a person not holding title

---

5. Mr. Clamp agreed with counsel's statement that "as far as transferring title to these vehicles that was done by [LAI] to [SNLC] when it became necessary." Mr. Foster similarly testified:

Q: Whether you bought [a car] or someone else bought it, how do you get that vehicle into another person's name? How would you have done that?
A: You sign the documentation, a Bill of Sale.
Q: All right. And whose name was the documentation on that Bronco in?
A: Who would it have been put in?
Q: Who—who was in—who was it in at the time of September? The documentation?
A: It showed [LAI], but to answer maybe what you're getting at, on some documents like that, it would have—it would go from [LAI] to [SNLC], then to the owner.

was true owner where person had purchased and paid for automobile and possessed a bill of sale).

We find no basis under the wording of the Penn National policy upon which to support the trial court's finding of coverage. The court's conclusion that LAI maintained an insurable interest in the vehicle is irrelevant to the inquiry. The terms of the policy govern the scope of the coverage, unless in conflict with statutory requirements. *Robinson v. Georgia Casualty & Surety Co.,* 235 S.C. 178, 110 S.E.2d 255 (1959) (although having an insurable interest is generally recognized as a prerequisite to recovery under a policy, it is not sufficient to trigger coverage under a liability policy where the omnibus clause by its terms limits coverage to automobiles owned by the insured. The relevant inquiry under such indemnity policies is ownership, not whether the named insured has an insurable interest). Katherine Foster was not the named insured, and was not operating a vehicle owned, hired or borrowed by LAI. Consequently, the Penn National policy did not provide coverage to her.

## ST. PAUL'S APPEAL

### I.

St. Paul first argues its policy does not afford coverage because SNLC did not own the Bronco. In light of our disposition of this issue as it regarded Penn National's appeal, we find this argument to be without merit.

### II.

St. Paul next argues the Bronco was not a "covered auto" because SNLC failed to notify St. Paul of its acquisition within 30 days. We disagree.

St. Paul's policy lists several types of autos which are "covered autos." As referenced in the "Auto Coverage Summary" of the policy, SNLC specifically purchased "any auto" coverage instead of "scheduled auto" coverage. The policy states that "any auto" coverage means "any owned, rented, leased or borrowed auto. It includes hired, nonowned, *newly acquired,* replacement and temporary substitute autos." (Emphasis added.) "Newly acquired" autos include any additional

autos acquired while the agreement is in effect. "Scheduled autos" coverage, on the other hand, includes "newly acquired" autos only if the insured notifies the carrier within 30 days of acquisition that coverage is needed.

St. Paul argues the Bronco, as a "newly acquired" auto, was subject to the 30 day notice requirement. However, the notice requirement only applies to "Scheduled autos." There is no requirement that SNLC give St. Paul 30 days notice under the "any auto" coverage, and a "newly acquired" auto is specifically included within the description of the "any auto" coverage which SNLC contracted to receive. Consequently, the Bronco was a "covered auto" under the St. Paul policy.

## III.

St. Paul next contends that the policy affords no coverage to Katherine Foster because she did not have permission to drive the Bronco at the time of the accident. Because Katherine Foster had a restricted license, St. Paul contends she exceeded the scope of any permission she may have had by driving after 8:00 p.m.

Whether coverage exists under an omnibus clause is a question of fact, and our review is limited to a determination of whether any evidence exists to sustain the trial court's findings of fact. *Allstate Ins. Co. v. Federated Mut. Implement & Hardware Ins. Co.*, 251 S.C. 203, 205, 161 S.E.2d 240, 241 (1968). The burden of proof rests with the party seeking to rely on the omnibus clause. *Id.* at 205–06, 161 S.E.2d at 241.

The trial court made a factual finding that Foster was a permitted user. The trial court did not consider whether Foster exceeded the scope of her permission, noting that Penn National failed to raise the issue as an affirmative defense. St. Paul now argues it raised the issue before the trial court and in a post-trial motion, and the trial court erred in failing to rule on the issue. Regardless, we find the policy's omnibus clause so broad that Foster could not have exceeded the scope of permission so as to exclude coverage as a matter of law.

In *State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co.*, 255 S.C. 392, 179 S.E.2d 203 (1971), the supreme court interpreted

an omnibus clause where the parties stipulated the policy coverage was that required under the statute. The statutory language in question was the predecessor to section 38–77–30(6) (unmodified), and stated in pertinent part: " '[i]nsured' means ... *any person who uses with the consent*, expressed or implied, of the named insured the motor vehicle to which the coverage applies...." S.C.Code Ann. § 38–77–30(6) (1989) (emphasis added). In interpreting the statute, the supreme court refused to recognize a distinction between the "use" for which the vehicle has been permitted and the permitted "operation." However, the court determined that under the statutory definition *"[c]onsent must run to the 'person who uses,' as well as to the use he makes."* *Id.* at 396, 179 S.E.2d at 205 (emphasis added). Because the insured's son was specifically forbidden from allowing anyone else to drive the car, the court held the third party driver was not an insured under the omnibus statute.[6]

In *Maryland Cas. Co. v. State Farm Mut. Auto. Ins. Co.*, 312 S.C. 476, 478, 441 S.E.2d 338, 339 (Ct.App.1994), however, this court found the policy definition broader than that set forth in the statute. The policy in that case provided coverage for "damages which an insured becomes legally liable to pay because of bodily injury to other ...," and defined an "Insured" as "any other person while using such a car *if its use is within the scope of consent* by you [named insured] or your spouse." (emphasis added). This court concluded that the only relevant inquiry, in view of the policy language, was whether the "actual use" of the vehicle was permitted, regardless of whether the person driving the vehicle had been given permission to use it. The court stated "under ... the plain meaning of the language of the policy, consent from the named insured need only flow to the use of the vehicle itself." *Maryland Cas. Co.*, at 480, 441 S.E.2d at 340. In so holding, this court relied upon the well recognized principle that an automobile insurance policy can, by its language, provide greater coverage than the minimum required by statute.

---

**6.** *See also Dearybury v. New Hampshire Ins. Co.*, 255 S.C. 398, 401, 179 S.E.2d 206, 207 (1971) (rejecting a similar "use" vs. "operation" argument stating: "[t]his conclusion is opposed by our opinion in *State Farm*, unless it is justified by policy language affording broader omnibus coverage than required by our statute.")

In this case, the omnibus clause in the St. Paul policy lists five categories as persons "protected under this agreement" including "[a]ny permitted user." This category provides:

> **Any permitted user.** *Any person* or organization *to whom you've given permission to use* a covered auto you own, rent, lease, hire or borrow is a protected person. (Emphasis added.)

We find this language, like that in *Maryland Cas. Co.*, *supra*, clearly provides coverage broader than required by the statutory language of section 38–77–30(6). St. Paul's policy affords coverage to anyone with permission to use the covered vehicle, without reference to permission for a particular use of the vehicle. Katherine Foster clearly qualifies as a person with permission to use a covered auto. There is no requirement that the use must be within the scope of permission. Foster was a person with permission to use a covered auto, and that is all that is required to trigger coverage. Her conduct on the date of the accident has no bearing on this issue.

As an agent of SNLC, in the business of selling and leasing automobiles, Mr. Foster unquestionably had unfettered authority to allow third parties to test drive his employer's autos. Thus, Mr. Foster clearly had the authority to permit Katherine Foster to drive the car. The grant of initial permission to Katherine was never questioned. The parties stipulated that "Mr. Foster allowed Katherine Foster *to test drive* the Bronco ... He allowed Katherine Foster to use the Bronco the day of the accident." Accordingly, the St. Paul policy affords coverage to Katherine Foster under the omnibus clause of the policy.

## IV.

Finally, St. Paul contends the trial court erred by finding it afforded primary liability coverage. St. Paul argues any coverage would be excess to Penn National, because Penn National's insured owned the Bronco.

St. Paul's policy states:

This agreement is primary insurance for covered autos you own and excess insurance for those you don't own....

When insurance provided by another insurer applies to covered bodily injury or property damage that results from an accident on the same primary or excess basis as this agreement, we'll pay only our share of your accident.

The question then is whether LAI or SNLC owned the vehicle for insurance purposes. In light of our disposition on this issue, it is clear that St. Paul's policy affords primary coverage.

In conclusion, we find the trial court's determination that coverage is afforded under the Penn National policy based on LAI's insurable interest to be unsupported by the stipulated facts. We further find the Bronco was owned by SNLC, triggering coverage under St. Paul's policy. Katherine Foster qualified as an "insured" permissive user and the Bronco was a "covered auto" under the policy definitions. Finally, St. Paul owes primary coverage by virtue of the ownership of the Bronco and the provisions of the St. Paul policy.

**AFFIRMED IN PART, and REVERSED IN PART.**

CURETON and HEARN, JJ., concur.