462 S.E.2d 260 (1995)
UNISUN INSURANCE COMPANY f/k/a American Mutual Fire Insurance Company, Respondent,
v.
FIRST SOUTHERN INSURANCE COMPANY, Petitioner.
No. 24293.
Supreme Court of South Carolina.
Heard May 16, 1995.
Decided August 7, 1995.
Rehearing Denied October 6, 1995.
Ruskin C. Foster, of McKay, McKay, Henry & Foster, Columbia; and Glenn V. Ohanesian, *261 of Ohanesian & Ohanesian, Myrtle Beach, for petitioner.
Stephen P. Groves, of Young, Clement, Rivers & Tisdale, Charleston, for respondent.
TOAL, Justice:
We granted certiorari to review the Court of Appeals' opinion in Unisun Insurance Co. v. First Southern Insurance Co., ___ S.C. ___, 443 S.E.2d 808 (Ct.App.1994). We affirm as modified herein.

FACTS
In Spring 1986, Peters was involved in an accident with the Subaru that is the subject of this action. Peters was at fault in the accident, and the other driver involved brought a negligence action in state court in Florida. That lawsuit, settled with Unisun, Peters' insurer, and First Southern, Subaru Center's insurer, each paying half the settlement.
Unisun then filed this declaratory judgment action alleging First Southern was the primary insurer of the Subaru and seeking recovery of sums Unisun paid in the Florida settlement. First Southern counterclaimed for the same relief, claiming Unisun was actually the primary insurer. Both the Unisun and the First Southern policy provided primary liability coverage if the named insured was "owner" of the vehicle in question. Neither policy defined the term "owner."
Peters' right to use the Subaru arose out of a franchise sales agreement between his father (Peters Sr.) and Subaru Center, Inc. (Subaru Center).[1] The agreement included the following terms:
 For ten years following the sale, Peters Sr.'s family would have use of three of Subaru Center's automobiles.
 Subaru Center would retain the certificates of origin to the automobiles used by Peters Sr.'s family.
 Subaru Center would insure these automobiles.
 These automobiles would have Subaru Center dealers' tags.
 Peters Sr.'s family could use an automobile for 6,000 miles, at which time that automobile would be returned to Subaru Center in exchange for another car.
After the automobiles were returned, Subaru Center would sell them and retain all the proceeds.
The trial judge found that Peters was a lessee. It further found that as a lessee, Peters was a co-owner with Subaru Center of the Subaru, and First Southern and Unisun should pay their proportionate shares of the Florida settlement. The Court of Appeals reversed, holding a lessee cannot be an owner as a matter of law and, therefore, Subaru Center was the sole owner of the Subaru thus making First Southern liable for the entire amount of the Florida settlement. Unisun Ins. Co. v. First Southern Ins. Co., ___ S.C. ___, 443 S.E.2d 808 (Ct.App.1994). This Court granted First Southern's petition for writ of certiorari.

LAW/ANALYSIS
First Southern contends the Court of Appeals erred in interpreting S.C.Code Ann. § 56-1-10(3) (1991)[2] to require as a matter of law that an automobile lessee can never be an "owner" for purposes of insurance policy coverage. We agree.
Section 56-1-10(3) provides:

For the purposes of this article, unless otherwise indicated, the following words, phrases and terms are hereby defined as follows:
(3) "Owner" means a person, other than a lienholder, having the property or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person, but excludes a lessee under a lease not intended as security. (emphasis added). *262 In previous cases concerning ownership for purposes of insurance coverage, this Court has relied upon the definitions and requirements of Title 56. See, e.g., Tollison v. Reaves, 277 S.C. 443, 289 S.E.2d 163 (1982) (relying largely on Title 56 definitions of "owner" to determine ownership for purposes of insurance coverage). Certainly, the definitions in Title 56 constitute strong persuasive authority when construing terms contained in insurance policies.
Nevertheless, the Title 56 definitions are not binding for purposes of insurance coverage. Indeed, the plain language of the statute limits the application of the definitional section to Article One of Title 56. Article One of Title 56 primarily concerns procedures relating to the licensing of motor vehicle drivers. It does not govern coverage under automobile insurance policies. For that reason, notwithstanding our reliance on the definition of "owner" in Title 56, we have always held that ownership is a question of fact for purposes of coverage under insurance policies. See, e.g., South Carolina Farm Bureau v. Scott, 274 S.C. 264, 262 S.E.2d 739 (1980) (noting ownership for purposes of "newly acquired automobile" clause of insurance policy is to be decided by reference to the particular facts and circumstances of the case). Similarly, whether a lessee is an owner under a particular automobile insurance policy is a question of fact that depends on the specific facts and circumstances of the case in question. Consequently, the Court of Appeals erred in finding that for purposes of insurance coverage a lessee cannot be an owner as a matter of law.
Therefore, this Court must determine whether the trial judge erred in holding Peters was co-owner of the Subaru. The standard for appellate review of this finding is whether there is any evidence that reasonably supports the trial court's findings of fact. See Townes Assoc. v. City of Greenville, 266 S.C. 81, 221 S.E.2d 773 (1976).
A certificate of title constitutes prima facie evidence of vehicle ownership for purposes of insurance coverage, but can be rebutted by evidence showing that someone other than the titleholder was the real owner. Tollison v. Reaves, 277 S.C. 443, 445, 289 S.E.2d 163, 164 (1982). Subaru Center, First Southern's insured, held the Certificate of Origin for the Subaru, which was the functional equivalent of a certificate of title, since Subaru Center was a dealership. See Bank of Augusta v. Satcher Motor Co., 249 S.C. 53, 152 S.E.2d 676 (1967) (describing manufacturer's statement of origin as indicia of ownership prior to the issuance of a certificate of title). Therefore, Subaru Center is presumed to own the Subaru.
First Southern argues it rebutted the presumption Subaru Center owned the Subaru. We disagree.
This Court has held that under certain circumstances, someone other than the actual titleholder should be deemed the owner for insurance purposes. In those cases, however, the owners' failures to hold title (or its equivalent) resulted from mere technicalities. See, e.g., Tollison v. Reaves, 277 S.C. 443, 289 S.E.2d 163 (1982) (finding person "true owner" of automobile titled to his mother, because person considered himself the owner, made the down payment and all other payments on the automobile, held his own insurance on automobile, and had sole possession); Grain Dealers Mut. Ins. Co. v. Julian, 247 S.C. 89, 145 S.E.2d 685 (1965) (holding a person not holding title was true owner where person had purchased and paid for automobile and possessed a bill of sale); State Auto Ins. Co. v. Stuart, 287 S.C. 235, 337 S.E.2d 698 (Ct.App.1985) (person not holding title found to be owner of car where titleholder had loaned that person money to purchase car, had issued bill of sale, and had transferred possession).
Here, Peters' failure to hold the Certificate of Origin for the Subaru was not a mere formality. In fact, his "exclusive possession and control" of the vehicle was only temporary, as he had a duty to return the vehicle to Subaru Center after the car reached 6,000 miles. Peters had no duty to maintain insurance on the automobile. Upon the sale of the vehicle, Subaru Center was entitled to all the proceeds. These facts clearly distinguish this case from prior cases in which a person not holding title to an automobile nevertheless was found to be the true owner. Because *263 there are no facts reasonably supporting a finding Peters owned the Subaru, the Court of Appeals correctly found Subaru Center was the sole owner. Consequently, the First Southern policy provided coverage for the entire amount of the Florida settlement.
Because of our disposition of this issue, we need not address the remaining issues raised by First Southern. For the foregoing reasons, the decision of the Court of Appeals is AFFIRMED AS MODIFIED.
FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.
NOTES
[1] The Record does not contain a written franchise sales agreement or any lease agreement. The depositions of Peters and Peters Sr. contain most of the information concerning the terms of the franchise sales agreement.
[2] We cite the version of the statute that was in effect in 1990 when this action was filed. Since then, the statute has been amended in ways not pertinent to this case.